**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Samuel Meiler SCHNAIDERMAN,**
**Defendant-Appellant.**

**No. 76–4282**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

March 6, 1978.

Rehearing and Rehearing En Banc
Denied May 11, 1978.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Max B. Kogen, Geoffrey C. Fleck, Miami, Fla., for defendant-appellant.

Jacob V. Eskenazi, U. S. Atty., Jamie L. Whitten, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, RONEY and HILL, Circuit Judges.

JOHN B. BROWN, Chief Judge:

Schnaiderman was convicted of making a false statement to a government official in violation of 18 U.S.C.A. § 1001 [1] (Count I) and of willfully failing to file a report that he was transporting into the United States more than $5,000 required by the Bank Secrecy Act, 31 U.S.C.A. § 1101 [2], and 31 C.F.R. §§ 103.23(a), 103.25(b), in violation of 31 U.S.C.A. § 1058 [3] (Count II). For the reasons discussed below, we reverse the conviction on both counts and remand with instructions to enter a judgment of acquittal.

Schnaiderman, a Venezuelan resident, arrived at Miami International Airport from Caracas and entered the customs line. When he attempted to present his customs declaration form (Form 6059–B), Customs Inspector Randall told Schnaiderman that he had to claim all his luggage prior to entering the inspection line. Also noticing that Schnaiderman had neither signed nor completed the customs declaration, Randall informed him that it would be necessary to do so.

When Schnaiderman reappeared in the line, Randall inquired in Spanish if he was carrying more than $5,000. Schnaiderman replied, "No." On completed Form 6059–B which Schnaiderman gave to Randall, "No" was checked in answer to the question (in Spanish) whether he was carrying over $5,000 in cash or negotiable instruments.[4] After questioning the traveler about a ring in his possession, Randall passed him on to Customs Officer Deely for a second examination. Deely, observing Schnaiderman's bulging pockets and nervousness, asked that he empty his pockets. The bulge comprised $8,086. At some point Deely asked Schnaiderman if he understood U.S. currency laws. Appellant responded that he was aware of those laws but that he was not going to spend the money in the United States. He was going to Aruba in two days to gamble.

Schnaiderman asserts that there is insufficient evidence as a matter of law to prove an intentional violation of 31 U.S.C.A. §§ 1101 and 1058. He also urges that his negative response to Randall's question falls within the "exculpatory 'no'" exception to 18 U.S.C.A. § 1001. Since we agree with these contentions, we do not reach the other issues raised on this appeal.

## Count II

United States v. Granda, 5 Cir., 1978, 565 F.2d 922 [1978] is dispositive of Schnaiderman's appeal from the 31 U.S.C.A. §§ 1101, 1058 conviction. The facts in Granda are strikingly similar to those be-

---

1. § 1001. Statements or entries generally

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 31 U.S.C.A. § 1101(a) reads in pertinent part:

[W]hoever . . . knowingly—

(1) transports or causes to be transported monetary instruments—

 * * * * * *

(B) to any place within the United States from or through any place outside the United States . . .

 * * * * * *

in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section. Government Form 4790 is the report in use pursuant to this section:

3. § 1058. Criminal penalty

Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both.

4. It bears emphasis that the basis of Count I is Schnaiderman's initial oral denial to Randall that he was carrying more than $5,000, *not* the written denial on the customs declaration Form 6059–B. We assume, without deciding, that the statute (see note 2, *supra*) which speaks specifically in terms of the duty to "file a report or reports" is violated by a knowing false oral statement.

fore us now. Mrs. Granda's customs declaration Form 6059–B contained a "No" answer to the question whether she was carrying over $5,000. Examination of her purse revealed a total of $10,000. She claimed to be unaware of the reporting requirements of 31 U.S.C.A. § 1101.[5]

This Court, following the lead of the Second Circuit,[6] held that since 31 U.S.C.A. § 1101 requires "knowing" transportation and since § 1058[7] requires a "willful" violation, there must be proof of the defendant's knowledge of the reporting requirement and his specific intent to commit the crime.

There were two bases for reversal. First, the trial court failed properly to instruct the jury on specific intent and such failure was held to be plainly erroneous.[8] Second, as a matter of law, it was impossible to prove beyond a reasonable doubt that Mrs. Granda acted with knowledge of the reporting requirements. Responding to the government's argument, also made in the present case, that the question on Form 6059–B put the traveler on notice that he must file the report of Form 4790, the Court stated:

> . . . The failure of the government to make known the requirements of the statute is fatal to their case. The isolated act of bringing money in excess of $5,000 into the country is not illegal or even immoral. What is required is merely a filing of the proper form. Proof of the requisite knowledge and willfulness, therefore, is almost impossible unless affirmative steps are taken by the government to make the laws' requirements known. The government argues that the

defendant was made aware of the reporting requirement by the question on the customs declaration form asking whether the defendant was carrying more than $5,000. We do not agree. The effect, if any, of this question is merely to cause the traveler to think that it is illegal to carry a large amount of money into the country. The question in no way tells the traveler it is perfectly legal to enter or leave the country with more than $5,000 but that a form reporting this fact must be completed. Nor does the untruthful answer of the question by the defendant prove beyond a reasonable doubt that she knew she was supposed to fill out a form. An untruthful answer could very easily be prompted by the question on the form which might cause the traveler who enters the country with more than $5,000 to think that his or her possession is by itself illegal, and who therefore answers untruthfully in order to attempt to avoid being caught breaking the law. We do not accept the government's contention that the defendant's falsification of her declaration forms proves that she was aware of the separate reporting requirement.

*Id.* at 926.

While Deely stated on direct that Schnaiderman admitted an awareness of U.S. currency laws, testimony elicited on cross indicates that Schnaiderman was not told specifically of the reporting requirements as mandated by *Granda*:

> Q And when you said he was familiar with the U.S. currency laws, what are the U.S. currency laws?

---

**5.** See note 2, *supra.*

**6.** See *United States v. San Juan*, 2 Cir., 1976, 545 F.2d 314; *United States v. Gomez Londono*, 2 Cir., 1977, 553 F.2d 805, *rev'g on other grounds*, S.D.N.Y., 1976, 422 F.Supp. 519.

**7.** See note 3, *supra.*

**8.** . . . In a case such as this, the proper instruction would include some discussion of the defendant's ignorance of the law since the defendant's alleged ignorance of the reporting requirements goes to the heart of his or her denial of the specific intent necessary

to commit the crime. *See United States v. Schilleci*, 545 F.2d 519, 524 (5th Cir. 1977). Failure of the defendant to have the benefit of this instruction was plain error.

*Id.* at 926. We point out in passing that the instruction given at the Schnaiderman trial did not include a discussion of defendant's ignorance of the law and suffers from the same defect which constituted plain error in *Granda*. However, since defense counsel did not object to the instruction given on specific intent nor is it challenged on this appeal, we do not base our reversal on this ground.

A Any person entering or leaving the United States is required to report over $5,000.00 if they are carrying it on themselves.

Q You didn't ask him that question. You just asked him if he understood the U.S. currency laws; is that right? You didn't explain to him what the U.S. currency laws were, did you Officer?

A At that particular time, no, I didn't. Tr. 59–60.

As pointed out by Judge Fay in *Granda*, it would be a simple matter for the government to notify travelers, either by way of modification of customs declaration Form 6059–B, or verbal advice and proffering Form 4790,[9] that if they are transporting more than $5,000 they are required to fill out Form 4790. None of these steps was taken to inform Schnaiderman of the reporting requirements and there is no evidence in the record from which the jury could conclude beyond a reasonable doubt that Schnaiderman had willfully failed to file a report knowing that such report was required. An acknowledged awareness of "U.S. currency laws" is too vague and unspecific to satisfy the *Granda* standards. Therefore, his conviction on this count must be reversed.

### Count I

■ As to Count I, Schnaiderman contends that his oral denial to Randall falls within the "exculpatory 'no'" exception to 18 U.S.C.A. § 1001 which was first established in this Circuit in *Paternostro v. United States*, 5 Cir., 1962, 311 F.2d 298. In

that case the appellant had given negative answers to a special agent of the Internal Revenue Service asking, *inter alia*, whether Paternostro had received graft money. After reviewing the legislative history of § 1001[10] and cases prosecuted under that statute, the Court held that § 1001 did not cover negative exculpatory responses to questions propounded by an investigating agent[11] during a conference not initiated by the interviewee. *Id.* at 305.

■ This interpretation of § 1001's scope was based on a consideration of the evils this statute was designed to eliminate.[12] Paternostro had made no statement relating to any claim on his behalf against the United States or an agency thereof. He was not seeking to obtain or retain any official position or employment in any agency or department of the government. Rather, he was sought out by a government investigative agent to determine what Paternostro knew or had done with respect to a system of organized graft in the police department. Finally, he did not aggressively and deliberately initiate any positive or affirmative statement calculated to pervert the legitimate functions of government. *Id.* This last factor has been critical in the Fifth Circuit cases since *Paternostro* in which the "exculpatory 'no'" exception has been asserted. See *United States v. Bush*, 1974, 503 F.2d 813, 818 ("exculpatory 'no'" exception applicable); *United States v. Johnson*, 5 Cir., 1976, 530 F.2d 52, 55 ("exculpatory 'no'" exception inapplicable). *Cf. United States v. Lambert*, 5 Cir., 1974, 501

---

**9.** See note 2, *supra*.

**10.** Section 1001 in its original form was aimed at preventing the presentation of false claims against the government. The 1934 amendment broadened the statute by eliminating the restriction of its application to cases where the government suffered pecuniary or property loss. 311 F.2d at 301–02. For a more detailed history of § 1001, *see United States v. Beer*, 5 Cir., 1975, 518 F.2d 168, 170–71; *United States v. Krause*, 5 Cir., 1975, 507 F.2d 113; *United States v. Bush*, 5 Cir., 1974, 503 F.2d 813; *United States v. Bedore*, 9 Cir., 1972, 455 F.2d 1109.

**11.** "Investigative agent" as broadly defined in *Paternostro* would include the Customs Officer who questioned Schnaiderman. See 311 F.2d at 309.

**12.** Another consideration has played a part in limiting the scope of § 1001. Judge Godbold, speaking for this Circuit en banc in *United States v. Lambert*, 5 Cir., 1974, 501 F.2d 943, 946 n.4, wrote, "the judicial gloss put on § 1001 . . . originates at least in part from latent distaste for an application of the statute that is uncomfortably close to the Fifth Amendment." See also *United States v. Bush, supra*, 503 F.2d at 818; *United States v. Beer*, 5 Cir., 1975, 518 F.2d 168, 171.

F.2d 943, 946 (en banc) (§ 1001 applicable to false statement which prompted FBI to conduct investigation); *United States v. Krause,* 5 Cir., 1975, 507 F.2d 113, 118 (§ 1001 applicable to false statements made during NLRB hearing where record showed aggressive action by defendant to impair functions of NLRB).

 We have concluded that 18 U.S.C.A. § 1001 was not intended to cover Schnaiderman's negative oral answer to Agent Randall and that the "exculpatory 'no'" exception applies under the circumstances of this case.

First, Schnaiderman was not making a claim against the United States, nor was he seeking employment with the government. More important, there is simply no evidence that Schnaiderman "aggressively and deliberately initiate[d] any positive or affirmative statement calculated to pervert the legitimate functions of government." *Paternostro,* 311 F.2d at 305. As to this prong of the *Paternostro* test, the government contends that Schnaiderman was the initiator because he sought permission to enter the United States. We disagree. Agent Randall clearly initiated the questioning. Schnaiderman did not walk up to Agent Randall and volunteer the statement, "I am not transporting more than $5,000" in order to prevent the agent from doing his duty. "Perversion of a governmental body's function is the hallmark of a § 1001 offense." *Lambert, supra,* 501 F.2d at 946. The "function" of the customs agents at issue here is to ensure that the transportation of more than $5,000 into the United States is reported. We cannot say Schnaiderman attempted to pervert something he may not even have known about and as to which we now have twice held, he was entitled to affirmative advice that such a report was required.

Our conclusion also fits the mold of possible self-incrimination at least in the minds of travelers who probably think it is illegal to bring more than $5,000 in currency into this country. See *Granda,* 565 F.2d at 926 quoted *supra.*

The relationship between Counts I and II is critical here. We have previously held that there is insufficient evidence as a matter of law to establish beyond a reasonable doubt that Schnaiderman willfully violated 31 U.S.C.A. §§ 1101 and 1058 because the government took no steps to bring the reporting requirements to his attention and there is no indication that he actually knew of the reporting requirements. We agree with Judge Dooling that § 1001 "must in each instance of its application derive the substance of its prohibition from the circumstances in which the statement is used. The statute here underlying § 1001, 31 U.S.C. 1101(b), is not one concerned with oral statements to investigators, but with written reports on the international transportation of monetary instruments." *United States v. Gomez Londono,* S.D.N.Y., 1976, 422 F.Supp. 519, 525, *rev'd on other grounds,* 2 Cir., 1977, 553 F.2d 805.[13] For Schnaiderman's statement to have come within the scope of § 1001 as defined in *Lambert,* the government would have to demonstrate a knowing and willful intent to pervert the purpose of the Bank Secrecy Act. On the record before us, there is simply no evidence that he had such an intent.

Here customs officials asked Schnaiderman a question without informing him of the simple consequences of an affirmative answer. They did not tell him that it was legal to bring more than $5,000 into the country so long as he filled out Form 4790. Thus, Schnaiderman stands convicted by his own word in a situation where the governmental function with which Congress was

---

**13.** The constitutionality of the Bank Secrecy Act and 31 U.S.C.A. § 1101 was upheld in the face of a Fourth Amendment challenge in *California Banker's Ass'n v. Shultz,* 1974, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812. There the Court found that the Act was prompted by Congressional concern with two problems in the enforcement of the regulatory, tax and criminal laws: first, a need to insure that domestic financial institutions maintain adequate records of transactions with their customers; and second, the widespread use of foreign financial institutions to evade domestic law (*e. g.,* Swiss bank accounts).

**1214**

concerned was the filing of a proper, obviously written report. As Judge Fay pointed out in *Granda*, asking a traveler whether he is carrying more than $5,000 inspires the belief that it is illegal to bring large sums of money into the United States. When customs officials do not disabuse travelers of that belief, an exculpatory "no" response to the question is outside the scope of 18 U.S.C.A. § 1001.

REVERSED.