**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald GROTKE, Defendant-Appellant.**

No. 331, Docket 82–1151.

United States Court of Appeals,
Second Circuit.

Argued Nov. 23, 1982.

Decided March 10, 1983.

**50**

Theodore J. Burns, Buffalo, N.Y. (Hurwitz & Fine, Buffalo, N.Y., of counsel), for defendant-appellant.

Kathleen M. Mehltretter, Asst. U.S. Atty., W.D.N.Y., Buffalo, N.Y. (Salvatore R. Martoche, U.S. Atty., W.D.N.Y., Buffalo, N.Y., of counsel), for plaintiff-appellee.

1. 18 U.S.C. § 1001 reads as follows:
   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or repre-sentations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Before WATERMAN, PIERCE and WINTER, Circuit Judges.

WATERMAN, Circuit Judge:

This is an appeal from a judgment of conviction and an unreported decision of the Honorable Charles L. Brieant, United States District Judge, sitting by designation in the United States District Court, Western District of New York. Appellant Ronald Grotke was charged in an indictment filed January 20, 1982, with having made false material statements to the United States Customs Service in violation of 18 U.S.C. § 1001 (1976).[1] Grotke was tried before Judge Brieant and a jury. The jury returned a verdict of guilty, and on March 11, 1982 Grotke moved for an order granting a new trial pursuant to Fed.R.Crim.P. 33 and, alternatively, for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c). Judge Brieant, in a decision dated March 31, 1982, denied these motions, and in so doing affirmed an earlier denial of a motion to suppress evidence.

On December 2, 1981 Grotke sought entry into the United States at the Peace Bridge in Buffalo, New York. He was a passenger in a car rented and driven by a friend. After routine questioning by primary inspectors at the Peace Bridge, at which time he told a primary inspector that he had been in Canada for a couple of hours and that he had a case of beer to declare, Grotke and his friend were referred to the secondary inspection area for further questioning.

At the secondary inspection area Inspector Joseph Coughlin questioned Grotke as to his citizenship, employment, recent whereabouts in Canada, and whether he had bought or acquired anything in Canada. Grotke again stated that he was returning

from Canada after being at the King Edward Hotel, in Fort Erie, Ontario, for only a few hours. Inspector Coughlin, along with Inspectors O'Scier and Alexander, asked him to step into the Customs Office to fill out Form 6059–B, which is a customs declaration form. He filled out this form and answered "no" to question 11, the currency question.[2]

After Grotke had filled out the form he and his friend were seated on benches in the inspection area while Inspector Coughlin searched the car's trunk and Inspector O'Scier searched the car's interior. Inspector Coughlin did not find anything significant in the trunk, but Inspector O'Scier did find, under the floor mat on the front passenger side, the remains of a smoked marijuana cigarette, commonly called a "roach."[3]

After this discovery, Inspector Coughlin asked Grotke to step into the Customs Office in order to conduct a pocket search for the possibility of drugs. Inspector Coughlin asked him to remove the coat which he was wearing, and, in so doing, Inspector Coughlin noticed a "Made in Canada" label inside the coat. Inspector Coughlin then asked him about this coat, and he initially stated that he had purchased it on an earlier trip to Canada, but had not paid a duty on it. Inspector Coughlin questioned him further on this, and Grotke then admitted that he had purchased it on this trip.

At this point Inspector Coughlin doubted Grotke's statement that he had been in Canada only a few hours, at the King Edward Hotel. In any event, Inspector Coughlin proceeded to conduct a pocket search of him to see if any drugs or a receipt for the coat could be found. This entailed searching the pockets of the coat and the jeans which Grotke was wearing. Since these jeans were so-called "designer

jeans," which are very tight fitting, Inspector Coughlin asked him to unbutton his fly so as to loosen the jeans in order to turn the pockets inside out. He was also subjected to a "pat-down" search. At this point nothing further had been found. Next, Inspector Coughlin asked Grotke to take off the cowboy boots he was wearing. He complied with this request, and as he was taking off his left boot a brown plastic bag containing $19,000 in U.S. currency fell out.

Grotke was subsequently arrested, given *Miranda* warnings, and subjected to a full strip search. This search, and another search of the car revealed nothing.

I. The Motion to Suppress

Grotke challenges Judge Brieant's order denying his motion to suppress the money found in his boot. He claims that the money was found as a result of a strip search and thus required reasonable suspicion.

■ It is well settled that border searches of luggage and personal belongings may be conducted without a search warrant and without regard to considerations of probable cause. *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). This includes searches of a person's outer clothing and the contents of a purse, wallet or pockets. *See Henderson v. United States,* 390 F.2d 805, 808 (9th Cir.1967); *United States v. Carter,* 592 F.2d 402, 405 (7th Cir.), *cert. denied,* 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979). However, greater intrusions into a person's privacy, such as strip searches, require "reasonable suspicion" on the part of the border official. The standard is that "[i]n each case, reasonableness is determined by weighing the warranted suspicion of the border official against the offensiveness of the intrusion." *United States v. Asbury,* 586 F.2d 973, 976 (2d Cir.1978).

2. Form 6059–B, question 11 reads as follows: "Are you or any family member carrying over $5,000.00 in monetary instruments such as coin, currency, traveler's checks, money orders, or negotiable instruments in bearer form? (If yes, you must file a Form 4790, as required by law)."

3. Inspector O'Scier conducted a field test on the roach, which showed the substance to be marijuana. In making this test the roach was completely destroyed. Judge Brieant, while believing in the existence of the roach, felt that the government had not proved its existence with sufficient certainty to give a basis for the later searches.

In this case no reasonable suspicion was required, as the search of shoes is "minimally intrusive." *United States v. Nieves,* 609 F.2d 642, 646 (2d Cir.1979), *cert. denied,* 444 U.S. 1085, 100 S.Ct. 1044, 62 L.Ed.2d 771 (1980). In *Nieves* this court stated that a shoe search "was an acceptable routine border inspection procedure, and that [such a] search needed no justification beyond that provided by [a] decision to cross our national boundary." *Id.*

Grotke contends, however, that more than a shoe search was conducted in that he was subjected to a pat-down and had to unbutton his pants. This action, it is contended, required reasonable suspicion, which Grotke claims was lacking. This claim is meritless. First, these aspects of the search did not reveal any evidence to suppress. Second, even if reasonable suspicion were required, it was present here. When Grotke was asked to remove his coat, an appropriate routine inspection action, Inspector Coughlin noticed the "Made in Canada" label on the coat. This provided adequate basis for the subsequent search. Accordingly, the motion to suppress was properly denied.

## II. Exculpatory "No" Doctrine

Grotke next claims that Judge Brieant erred by denying his request for dismissal based on the "exculpatory no" defense. This defense was well considered by the Tenth Circuit in *United States v. Fitzgibbon,* 619 F.2d 874 (10th Cir.1980), where the court stated:

> The predicate of the "exculpatory no" defense is simply that a negative response cannot serve as proof of the requisite knowledge and willfulness required to convict under 18 U.S.C. § 1001, absent affirmative steps taken by the government to make the reporting requirements of the law known.

*Id.* at 876.

Grotke relies heavily on *United States v. Schnaiderman,* 568 F.2d 1208 (5th Cir.1978), where the Fifth Circuit reversed a conviction based on a violation of 18 U.S.C. § 1001. The facts in *Schnaiderman* are similar to the case at bar; indeed, the only significant difference being that in *Schnaiderman* the defendant not only checked "no" as his answer to the currency question on Form 6059–B, but he also gave an oral "no" as an answer to a similar question asked by a Customs official.

The *Schnaiderman* court based its opinion on a variety of factors. First, the court noted its interpretation of the legislative history of 18 U.S.C. § 1001 in *Paternostro v. United States,* 311 F.2d 298 (5th Cir. 1962). In *Paternostro* the court concluded that § 1001 was intended to cover those situations where an individual initiates a false statement to the government, designed, for instance, to advance a claim against the government or to obtain or retain an official post or employment with the government. 311 F.2d at 305. While the Fifth Circuit did not delineate other situations where § 1001 is applicable, it seemed to state that, at the very least, it covers situations where an individual "aggressively and deliberately initiate[s] any positive or affirmative statement calculated to pervert the legitimate functions of Government." *Id.*

The *Schnaiderman* court next considered the nature of the defendant's statement. The court pointed out that the defendant was not seeking government employment. Nor did the *Schnaiderman* court feel that the defendant "aggressively and deliberately initiate[d] any positive or affirmative statement designed to pervert the legitimate functions of government." 568 F.2d at 1213 (quoting *Paternostro, supra* 311 F.2d at 305). In reaching this conclusion the court dismissed the argument that the defendant was the initiator of the statement simply by virtue of seeking to enter the country. 568 F.2d at 1213. Moreover, as to the perversion of a legitimate function of government, the court stated that

> [t]he 'function' of the customs agents at issue here is to ensure that the transportation of more than $5,000 into the United States is reported. We cannot say [that the defendant] attempted to pervert something he may not even have known about and as to which we now have twice

held, he was entitled to affirmative advice that such a report was required. *Id.*

Additionally, the *Schnaiderman* court felt that these types of cases present a problem concerning self-incrimination. The court's reasoning here is that it is perfectly legal to bring over $5,000 into the country. By asking a question such as the currency question the court felt that travelers might think it is illegal to bring more than $5,000 into this country, and thus falsely answer "no" in an effort to avoid being caught breaking the law. The court stressed the absence of any effort by the Customs officials to affirmatively bring the reporting requirement to the traveler's attention. *Schnaiderman, supra,* 568 F.2d at 1213; *see United States v. Granda,* 565 F.2d 922, 926 (5th Cir.1978).

On the strength of the above reasoning the *Schnaiderman* court concluded that the evidence did not support a finding that the defendant had a knowing and willful intent to pervert the purpose of the reporting law.

■ We do not believe that the "exculpatory no" doctrine is applicable here. In *Fitzgibbon, supra,* the Tenth Circuit also reviewed the legislative history of § 1001. That court pointed out that § 1001 requires that the false statement be made "in any matter within the jurisdiction of any department or agency of the United States." 619 F.2d at 878 (quoting *Bryson v. United States,* 396 U.S. 64, 70, 90 S.Ct. 355, 359, 24 L.Ed.2d 264 (1969)). In these situations Congress has statutorily assigned to the Customs Department the responsibility of compiling reports on currency influxes into this country because of concern that federal regulatory, tax, and criminal laws were being circumvented. *See Fitzgibbon, supra,* 619 F.2d at 878–79 (quoting *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 35–36, 94 S.Ct. 1494, 1504–1505, 39 L.Ed.2d 812 (1974)). Thus, it is clear that the statement

elicited here is within the jurisdiction of the Customs Department, *see United States v. Adler,* 380 F.2d 917, 921–22 (2d Cir.1967), and, in light of the purpose of the reporting statute, it is likewise clear that the statement sought is "material" to a legitimate government function. Thus, to this extent we disagree with the *Schnaiderman* court and conclude that the false statement Grotke made to the customs officials was within the meaning of § 1001.

■ Moreover, the evidence in the instant case supports a finding that Grotke knowingly and willfully violated the provisions of § 1001. In this regard the district court stressed the fact that he concealed the money in his boot. It is obvious that Grotke knew he had the money in his boot, and it is logical to assume that he put it there in order to avoid declaring its existence to the Customs officials, as is required by law.[4]

Moreover, Grotke cannot claim that he was not aware of the reporting requirement, unlike the situation in *United States v. San Juan,* 545 F.2d 314 (2d Cir.1976). While no posters advising travelers of the reporting requirement were posted at the Peace Bridge, *cf. Fitzgibbon, supra,* 619 F.2d at 880, Form 6059–B contains the clear statement that if one is entering the country carrying in excess of $5,000, by law a report must be filled out. We deem this to be sufficient.

■ Finally, we do not see any problem concerning self-incrimination. Nowhere does Form 6059–B, or the actions of the Customs officials suggest that it is illegal to carry in excess of $5,000 across our border. In fact, the above discussed provision of Form 6059–B, that if in excess of $5,000 is being carried a separate form must be completed, clearly suggests that it is perfectly legal to carry in excess of $5,000 across our borders. In summary, we agree with the Tenth Circuit's position as stated in *Fitzgib-*

---

4. Form 6059–B contains the following sentence which is located directly above the space where the appellant placed his signature: "I certify that I have declared all items acquired abroad as required herein and that all oral and written

statements which I have made are true, correct, and complete."

In addition, Form 6059–B states in bold type: "False Statements Made To A Customs Officer Are Punishable By Law."

*bon, supra,* "[the appellant] could not have suffered any penalty or sanction at the hands of the Customs officials had he truthfully reported the currency in his possession. The knowing, false representation made by [the appellant] obstructed a statutorily mandated administrative function of a federal governmental agency." 619 F.2d at 881. Accordingly, the district court's denial of the motion to dismiss was proper.

### III. Preemption of 18 U.S.C. § 1001 by the Currency and Foreign Transactions Act

■ Grotke's final claim is that 18 U.S.C. § 1001 is preempted by the criminal provisions of the Currency and Foreign Transactions Reporting Act, 31 U.S.C. §§ 1051–1143 (1976). It is this Act which contains the reporting requirement, 31 U.S.C. § 1101, and it is enforceable by a misdemeanor penalty section, 31 U.S.C. § 1058. However, 31 U.S.C. § 1052(k) states:

> For the purposes of section 1001 of Title 18 the contents of reports required under any provision of this chapter are statements and representations in matters within the jurisdiction of an agency of the United States.

The Fifth Circuit, in *United States v. Anderez,* 661 F.2d 404 (5th Cir.1981) considered this same issue and rejected the contention that § 1001 is preempted by the Act. We agree.

The judgment of conviction below is affirmed.