**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Santos SALINAS–GARZA,**
**Defendant-Appellant.**

No. 85–2851.

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1986.

J.A. Tony Canales, Nancy M. Simonson, Corpus Christi, Tex., for defendant-appellant.

James R. Gough, Jr., Susan L. Yarbrough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before JOLLY, HILL and JONES, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Santos Salinas-Garza appeals his conviction of attempting to transport monetary instruments of more than $10,000 from the United States into Mexico without filing the required currency report, in violation of 31 U.S.C. § 5316(a)(1)(A). Salinas-Garza claims that the district court erred in denying his motion to suppress evidence based on an illegal search and that the evidence was insufficient to support the conviction. Finding no merit to these claims, we affirm.

I.

Early in the morning of July 17, 1985, Drug Enforcement Administration (DEA) Agent Luis Saldana informed United States Customs Inspector Rolando Cano that an individual would be attempting to leave the United States for Mexico with a large sum of money to be used to purchase narcotics. Saldana identified the individual as Salinas-Garza, and told Cano that Salinas-Garza would be attempting to cross the border at Hildago, Texas in a motor vehicle at approximately 6:00 A.M. Saldana described the vehicle (apparently as a late model Ford pickup truck dark in color), along with providing the license plate number, although one digit was transposed.[1]

Cano transmitted this information to other customs agents stationed at the border; they waited for the vehicle in the export lot near the toll booth leaving the United States. At approximately 6:15 A.M. a vehicle matching the description given by Saldana was sighted by Cano, who then radioed the other agents warning them that the vehicle was approaching. Because of the similar description and license plate the vehicle was stopped at the toll booth. The customs agents identified themselves and asked Salinas-Garza to produce his driver's license. Upon positive identification of Salinas-Garza, they asked him and his wife and two children to step out of the vehicle.

At this point both agents asked Salinas-Garza if he was taking money into Mexico in excess of $10,000. After receiving a negative response, one agent drove the vehicle over to the secondary inspection area while the other walked with the family. Cano joined the group, and also asked Salinas-Garza whether he was going to export over $10,000 from the United States. Salinas-Garza denied having $10,000. A search of the truck followed, with inspectors find-

---

1. Since Agent Saldana did not testify at the trial, it is not clear exactly how he described the pickup truck. There are various references to the color, however, as being black, dark blue, dark gray, and dark gray two-tone.

ing a purple bag containing $25,000 in cash concealed in the back of the bucket-seat. An additional $444 was found in Salinas-Garza's wallet and $2,500 in his wife's purse (the $2,500 was not seized).

There are signs posted at the border control area that inform travelers of the monetary reporting requirements; these signs are approximately two feet by three feet in size. Although the exact location of these signs is not clear from the trial record, there are various statements to the effect that signs are located at the primary inspection area (apparently the area where travelers first arrive at the United States from Mexico) and in the vicinity of the export lot.[2] Although the record does not contain a diagram of the border area, it appears that Salinas-Garza had to have passed the export lot prior to reaching the toll booth where he was stopped.[3]

Salinas-Garza made a motion to suppress the evidence which was heard concurrently with the trial on the merits. At the conclusion of the trial without a jury, the judge made findings of fact similar to those set forth above. Based on these facts, the judge held that the search of the vehicle was justified under the "border search" exception to the fourth amendment, that there was probable cause under the fourth amendment,[4] and that under 31 U.S.C. § 5317(b) there was reasonable cause. Also, based on the evidence presented at the trial, the judge found Salinas-Garza guilty of violating 31 U.S.C. § 5316(a)(1)(A). Salinas-Garza contests these conclusions.

## II.

■ The border search exception allows customs agents to make warrantless searches of persons entering the United States without having any suspicion of criminal activity. *See United States v. Oyarzun*, 760 F.2d 570, 574 (5th Cir.1985); *United States v. Rojas*, 671 F.2d 159, 164 (5th Cir.1982). Some circuits have extended the rationale to persons exiting the country.[5] *See, e.g., United States v. Dun-*

---

2. The statements are:

> Customs Agent Cano: We have posters that are quite visible in English and Spanish that state the law, reporting requirements as to currency in any form, entering or departing the United States over the excess of $10,000 has to be reported. And we have these posters placed out in the primary booths and by the export lot.
>
> * * * * * *
>
> Mr. Alfaro: Where is this sign that you are telling the Judge it says? This notice about taking money out of the country, where is that located?
>
> Customs Agent Martinez: All over the port of entry.
>
> Mr. Alfaro: Tell me one place where it is as you are going south out of Hidalgo into Mexico.
>
> Agent Martinez: Right there on the export lot.
>
> * * * * * *
>
> Mr. Alfaro: If a person at the booth where the defendant was in a pickup truck, are there any signs that are visible that explain the law on the export of money?
>
> Customs Agent Bowman: The poster in the export lot is visible as you approach the toll booth.
>
> Mr. Alfaro: Can you read it, though, without a telescope?
>
> Agent Bowman: I think so, it is a large poster.

> Agent Bowman: The export building is here. The export lot is this area. The poster is here in the front of this building, visible to those that are proceeding south to Mexico.

3. In answering a question by defense counsel as to whether Salinas-Garza drove through the export lot, a customs agent replied: "No, right beside it."

4. Neither the finding of probable cause under the fourth amendment nor the justification based on the border search exception are appealed.

5. These circuits base their decision to so extend the border search, in part, on dictum in the Supreme Court decision *California Bankers Association v. Shultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). The Court stated: "those entering and leaving the country may be examined as to their belongings and effects, all without violating the Fourth Amendment...." *Id.* at 63, 94 S.Ct. at 1518, 39 L.Ed.2d at 841.

One Ninth Circuit panel, however, has indicated that they would reach an opposite conclusion. *See United States v. Des Jardins*, 747 F.2d 499, 504 (9th Cir.1984), ("If we were free to act on our conclusions, we would rule that the search of appellant's belongings and person [when exiting the country] was unconstitutional....") *modified in part on other grounds,* 772

*can,* 693 F.2d 971, 977 (9th Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *United States v. Swarovski,* 592 F.2d 131, 133 (2nd Cir. 1979). Such a standard would allow a warrantless search of a person leaving the country "without any modicum of suspicion of criminal activity." *Rojas,* 671 F.2d at 164. However, we do not need to decide whether to adopt such a position because even if such a border search were constitutionally permissible, Congress can further restrict the search authority of federal agents, and has done so in the context of this case. Thus, it is not the constitutional standard of a border search that regulates the behavior of the custom agents in this case, but a statutory one.

The authority of customs agents to conduct a warrantless search of a vehicle for monetary instruments being transported in violation of 31 U.S.C. § 5316 is controlled by 31 U.S.C. § 5317(b). This section provides that:

> A customs officer may stop and search, without a search warrant, a vehicle, vessel, aircraft, or other conveyance, envelope or other container, or person entering or departing from the United States with respect to which or whom the officer has reasonable cause to believe there is a monetary instrument being transported in violation of section 5316 of this title.

31 U.S.C. § 5317(b). Thus, in order for the stop and search of Salinas-Garza to have been proper, the facts must demonstrate that the customs agents had a reasonable cause or suspicion to believe section 5316 was being violated.[6]

Reasonable suspicion must be based on specific and articulable facts that, together with rational inferences from those facts, reasonably warrant suspicion that illegal activity is occurring. *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95

S.Ct. 2574, 2581, 45 L.Ed.2d 607, 618 (1975); *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968); *see also United States v. Gomez,* 776 F.2d 542, 546 (5th Cir.1985); *United States v. Head,* 693 F.2d 353, 356 (5th Cir.1982). Reasonable suspicion may be predicated upon the collective knowledge of law enforcement officers where there has been reliable communication between the supplier of the information and the officer acting upon the information. *United States v. Allison,* 616 F.2d 779, 782 (5th Cir.), *cert. denied,* 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72 (1980). *See also Head,* 693 F.2d at 357.

In this case, customs agent Cano received information from DEA agent Saldana. The accurate transmission by a law enforcement agent of articulable objective facts, subsequently corroborated, was sufficient to create a reasonable suspicion in the minds of the customs agents. *Allison, supra.* DEA agent Saldana called Cano early in the morning informing him that a specifically named person, Salinas-Garza, would be attempting to cross the border at 6:00 A.M. with a large sum of money in a dark colored Ford pickup truck having a specifically identified license plate. At 6:15 A.M. a dark colored Ford pickup truck approached, with a license plate number identical but for one transposed digit. Upon asking for identification, the customs agents verified the person as Salinas-Garza. We conclude that such facts give rise to a reasonable cause or suspicion to stop the vehicle and inquire whether Salinas-Garza was transporting monetary instruments in excess of $10,000. After he responded in the negative and since all the other information proved to be correct, it was reasonable for the agents to believe Salinas-Garza was violating section 5316(a)(1)(A) and to then search the vehicle.

---

F.2d 578 (1985). This circuit has not yet decided this issue, *see Rojas,* 671 F.2d at 164, and need not decide it here because, as discussed *infra,* Congress has statutorily mandated that there must be reasonable cause before making a search.

**6.** *See United States v. Arends,* 776 F.2d 262, 264 n. 1 (11th Cir.1985) ("Under [section 5317(b)] the government must have reasonable suspicion to search individuals or objects for currency violations.").

Salinas-Garza, however, argues that reasonable suspicion did not exist because the only basis for the search was information from Saldana, who received it from an unidentified source of unknown reliability. Moreover, he argues that since some details proved incorrect (the color of the truck and the license plate number were not completely accurate), the amount of money referred to was only a "large amount," and the only accurate details were innocent ones, the information did not give rise to a reasonable suspicion.

■ While it is not entirely clear where the information originally came from, there is some indication in the record that another DEA agent supplied it to Saldana.[7] However, even assuming information comes from an informant of unknown reliability, when the details of the tip are corroborated by independent investigation, it may give rise to a reasonable suspicion. *Gomez*, 776 F.2d at 546. Even if the details are *innocent*, they can suffice. *Id.* In the present case, even though some aspects of the information were not completely accurate, other details, although "innocent," were accurate, and in the aggregate they implicated only one vehicle and one person. In fact, although a number of other pickup trucks drove through, it was only the one with a similar license plate that was stopped. These facts, having been corroborated, did give rise to reasonable suspicion that justified the stop and search of Salinas-Garza.

### III.

Salinas-Garza's second argument is that the evidence was insufficient to support his conviction of violating the reporting requirement of section 5316(a)(1)(A). We find no merit to this argument.

■ Section 5316 provides, in relevant part, that:

(a) Except as provided in subsection (c) of this section, a person or an agent or

bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly—

(1) transports or has transported or attempts to transport or have transported monetary instruments of more than $10,-000 at one time—

(A) from a place in the United States to or through a place outside the United States....

31 U.S.C. § 5316(a)(1)(A). This statute requires that the acts be done knowingly and wilfully. The words "knowingly" and "wilfully" "make it necessary that the defendant have *actually known* of the currency reporting requirement and have voluntarily and intentionally violated that known legal duty in order to be convicted of the crime." *United States v. Warren*, 612 F.2d 887, 890 (5th Cir.) (en banc) (emphasis in original), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). Proof of the requisite knowledge can be established when affirmative steps are taken by the government to make the law's requirements known. *United States v. Granda*, 565 F.2d 922, 926 (5th Cir.1978). *See also United States v. San Juan*, 545 F.2d 314, 319 (2d Cir.1976) ("[I]n order to prove wilfulness, the Government should make some effort to bring the reporting requirement to the traveler's attention.").

The trial court concluded that the evidence established beyond a reasonable doubt that the defendant violated section 5316(a)(1)(A). In doing so the court found the evidence fulfilled the requirements of the statute. What evidence the judge relied on is not exactly clear, but in reviewing the entire record, the judge's decision does not appear to be incorrect. Since in evaluating a challenge to the sufficiency of the evidence the court views "the evidence, together with all reasonable inferences, in the light most favorable to the government," *United States v. Del Aguila-Reyes*, 722 F.2d 155, 157 (5th Cir.1983), we find the

---

7. During the trial, defense counsel stated: "I want [the witness] to see the report and see where [DEA agent] Cecil Hester's name is in it as being the officer who called Saldana." Thus, it appears this is the origin of the information. Where Hester originally procurred the information is not in the record and he was not called to testify.

evidence was sufficient to convict Salinas-Garza.

In *Granda* the court considered methods by which the government could put people on notice of the reporting requirements. One suggested method for those entering the country was "to add a sentence on the Customs Declaration Form to the effect that if you are carrying greater than $5,000 you are required by law to fill out certain forms. Such a sentence would place all travelers on notice." *Id.* at 926. *See also United State v. Schnaiderman*, 568 F.2d 1208, 1212 (5th Cir.1978) (the forms should be so modified); *San Juan*, 545 F.2d at 319–20 n. 18 (same). The use of a modified form indicating that a person must declare whether he or she is carrying greater than $10,000 has been held to satisfy the government's burden of proving notification of the reporting requirement. *See United States v. Rodriguez*, 592 F.2d 553, 557 (9th Cir.1979) ("The modified form signed by Rodriguez satisfied the government's burden of proving notification of the reporting requirement and Rodriguez's knowing and wilful violation.").

In the present circumstances, however, such a solution was not possible. Persons crossing the border were not required to fill out a declaration form. Thus, the only possible and practical method for the government to put travelers on notice was through the use of signs. The use of signs, therefore, in the present situation, where the other more direct forms of notice were not available, was adequate to put travelers on notice. These signs were located at such locations that persons traveling to Mexico would pass the export lot and see them. Salinas-Garza passed the export lot, putting him on notice. Since Salinas-Garza was put on notice by the signs, the government has met its burden of proving knowledge.

The judgment of conviction is AFFIRMED.

E. GRADY JOLLY, Circuit Judge, dissenting:

The majority affirms the district court's holding that the defendant is guilty of violating 31 U.S.C. § 5316(a)(1)(A). The crime is to transport in excess of $10,000 out of this country *without reporting it.* To export such an amount is *not* the crime. *See United States v. Granda*, 565 F.2d 922, 926 (5th Cir.1978). Yet in an oral opinion rendered following the trial, the district court stated: "I am persuaded beyond a reasonable doubt that at a given time he did have the required knowledge that it was prohibited by law for him to take outside of this country the amount of money in excess of $10,000." In other words, the district court found Salinas-Garza guilty and sentenced him for violation of a non-existent offense. The majority ignores the district court's statement in the oral opinion, apparently viewing it as a misstatement corrected by a later written conclusion that Salinas-Garza was guilty of violating 31 U.S.C. § 5316(a)(1)(A). Even if the majority is correct in this respect, I must still dissent because of failure of the government to satisfy its burden of proof.

Based on the language of the statute, we have previously held that the government must prove "the defendant's knowledge of the reporting requirement and his specific intent to commit the crime." *United States v. Granda*, 565 F.2d 922, 926 (5th Cir.1978). Here the district court found that the notice given was not effective "[b]ecause none of us look at those [signs posted at the border]." In the written opinion, the court did find that "signs at the bridge area reminded travelers that they must declare any monetary instruments of more than $10,000." I do not see this statement as in any manner negating, or even contradicting his prior finding that the signs are not read by travelers and therefore do not provide effective notice of the reporting requirement. In any event, it is clear that the district court's only statement as to whether the signs supplied actual knowledge with respect to this defendant was its finding that they did not. Hence a key element of the offense is clearly missing from the district court's opinion of guilt.

Furthermore, the district court did not satisfy this element when it went on to state in its oral opinion that it was persuaded beyond a reasonable doubt that the defendant had knowledge of the reporting requirement from the fact that the defendant failed to declare his excess money after he was taken into detention. The border officers only asked Salinas-Garza whether he was transporting money in excess of $10,000. In each instance he replied in the negative. We have previously held that a question on a customs declaration form regarding whether the traveler is carrying a certain amount of money is insufficient notice of the reporting requirement. *United ed States v. Schnaiderman,* 568 F.2d 1208, 1211 (5th Cir.1978). "The effect, if any, of this question is merely to cause the traveler to think that it is illegal to carry a large amount of money into the country. The question in no way tells the traveler it is perfectly legal to enter or leave the country with more than $5,000.00 but that a form reporting this fact must be completed." *Id.* Salinas-Garza was not told by the border officers that transporting the money was legal but must be reported. Just as the written question was determined to be ineffective in *Schnaiderman,* so must the oral questions here. Therefore neither the questions nor the defendant's answer are dispositive of the question of Salinas-Garza's knowledge of the reporting requirement.

Furthermore, I dissent because I think that it is inappropriate for this appellate panel to substitute itself as fact-finder. The majority, apparently acknowledging that the district court never made a finding that the defendant had actual knowledge, sets out all of the testimony regarding the location and content of the warning signs in footnote 2 and concludes, *as a fact,* that the defendant had actual knowledge of the reporting requirements, a fact that the district court in its express words did not find. All of this testimony concerning the location and content of the warning signs was before the district court who *rejected it as a basis for knowledge.* The majority fails to inform us whence it derives its authority to act as the district court in adjudging the defendant guilty of a crime by supplying a factual element rejected by the actual trial court.

In conclusion, I take pains to make it clear that I am not saying that the signs posted at the border are not adequate and competent evidence upon which the trier of fact can conclude that a defendant had actual knowledge of the reporting requirements. I am simply saying that the burden is on the government to prove to the trier of fact that the defendant had actual knowledge. If the trier of fact concludes that the signs did not provide a given defendant actual knowledge of the reporting requirements, we are not free to supplant the trial court as finder of fact. Stated differently, the government can post all the signs that the Government Printing Office can roll off its presses, but if a defendant, charged with failing to report, can convince the trier of fact that notwithstanding the signs he never gained actual knowledge of the reporting requirement, he is entitled to an acquittal and there is nothing that an almighty appellate panel can do about it in a criminal prosecution.

I respectfully dissent.