**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gjon BERISHA, Defendant–Appellant.**

No. 90–1492
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1991.

Rehearing and Rehearing En Banc
Denied April 1, 1991.

Bill Bratton, Dallas, Tex., for defendant-appellant.

Frank Able, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Ft. Worth, Tex., for plaintiff-appellee.

Before KING, GARWOOD and DUHÉ, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant Gjon Berisha (Berisha) appeals from his conviction for failure to file a currency and monetary instrument report, in violation of 31 U.S.C. § 5316(a),

and for making false statements in violation of 18 U.S.C. § 1001. The relevant facts in this case are as follows: On February 8, 1989, Berisha proceeded to board an international flight at the Dallas–Fort Worth International Airport. A United States Customs inspector, conducting currency checks of departing passengers, stopped Berisha and asked him whether he was carrying more than $10,000. Berisha stated that he had only $8,000 in his possession and patted a bulge in his front pants pocket. The inspector informed Berisha that if he had more than $10,000 he was required to file a report. Berisha replied that he was aware of the reporting requirements but had only $8,000. The inspector, noticing a bulge in Berisha's other front pants pocket, decided to escort Berisha to a secondary inspection area to count the money. As they turned towards the other area, Berisha attempted to hand a roll of United States currency to his traveling companion. The inspector interceded and found that Berisha had been carrying two rolls of United States currency totalling over $17,000.

After being indicted for failure to file a currency and monetary instrument report and for making false statements, Berisha filed a motion before the district court to suppress what he deemed to be illegally obtained evidence. The district court overruled Berisha's motion to suppress. A jury trial ensued, and Berisha was found guilty on both counts of the indictment.

On appeal, Berisha argues that the district court erred in overruling his motion to suppress the evidence because the airport search violated his fourth amendment rights. He also argues that the evidence was insufficient as a matter of law to sustain a conviction as to Counts One and Two of the indictment. Finally, he argues that the district court erred by admitting into evidence oral statements made by him while under interrogation by a United States Customs officer because the interrogation was not conducted in accordance with his fifth amendment rights under *Miranda v. Arizona*.[1]

### I.

Berisha first attempts to challenge the search as unconstitutional *per se* because it was based on less than reasonable suspicion and was conducted without a warrant. This court, following the pattern of the Supreme Court's analysis in *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977), has adopted a two-part inquiry in order to determine the constitutionality of a warrantless search. *See United States v. Williams*, 617 F.2d 1063 (5th Cir.1980). First, the court must assess whether the search has been authorized. The search in this case was authorized by statute, namely 31 U.S.C. § 5317(b). This statute states that "[f]or purposes of ensuring compliance with the requirements of section 5316,[2] a customs officer may stop and search, at the border and without a search warrant ... any person entering or departing from the United States."

The inquiry that the court must then make is whether the search or seizure itself, as authorized, was reasonable within the meaning of the fourth amendment. The reasonableness of a warrantless, but authorized, search or seizure must be assessed through weighing the governmental policies served by the search or seizure against the personal interests that are adversely affected. *Williams*, 617 F.2d at 1074. In *United States v. Montoya de Hernandez*, the Supreme Court stated that "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." 473 U.S. 531, 538, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381 (1985). In *United States v. Ramsey*, the Court stated that "searches

---

**1.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** 31 U.S.C. § 5316 provides in pertinent part that: "a person or an agent or bailee of the person shall file a report ... when the person, agent, or bailee knowingly—(1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—(A) from a place in the United States to or through a place outside the United States...."

made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border...." 431 U.S. 606, 616, 97 S.Ct. 1972, 1978, 52 L.Ed.2d 617 (1977).

■ This court has, therefore, construed the rationale applied to border searches under the fourth amendment to allow customs agents to make warrantless searches of people entering the country without reasonable suspicion, provided that those searches are routine.[3] *See, e.g., United States v. Oyarzun,* 760 F.2d 570 (5th Cir. 1985); *see also United States v. Safirstein,* 827 F.2d 1380, 1383 (9th Cir.1987) ("temporary investigatory stop does not rise to the level of a 'seizure' within the meaning of the Fourth Amendment. Officers do not violate the Fourth Amendment by approaching an individual in a public place and putting questions to him if he is willing to answer.").

■ In the instant case, we agree with the district court's conclusion that the initial detention, including the Customs offi-

cer's request that Berisha accompany him to Secondary Customs, constituted a routine border procedure. The detention was neither coercive nor unduly intrusive, and therefore did not constitute a seizure for fourth amendment purposes.[4]

Berisha argues, however, with respect to the initial detention, that even if under the relevant statute a similar detention of someone entering the United States would be constitutional, the constitutionality of "routine" searches and seizures of *outgoing* travelers based on no suspicion has not been established in this circuit. In *United States v. Salinas–Garza,* 803 F.2d 834, 836–37 (5th Cir.1986), this court recognized that some circuits have extended the rationale of the fourth amendment border policy—allowing searches of persons entering the United States without any suspicion of criminal activity—to persons exiting the country.[5] We specifically declined to decide the issue in that case because 31 U.S.C. § 5317(b) at that time contained a "reasonable cause" requirement.[6] Our inquiry in that case was, therefore, limited to whether reasonable cause existed to justify the search.[7]

---

**3.** The "reasonable suspicion" standard applies to at least some types of detentions at the border that go beyond the scope of a routine border search and inspection. *See Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).

**4.** Berisha's challenge with respect to the alleged fourth amendment violation focuses only on the actions of the Customs officials prior to his attempted transfer of money to his companion. He concedes that reasonable suspicion existed subsequent to that point.

**5.** *See United States v. Swarovski,* 592 F.2d 131, 133 (2d Cir.1979) ("Appellant's contention that customs officials can make [a warrantless] search only when the person whose effects are being searched is entering the United States is not the law."); *United States v. Duncan,* 693 F.2d 971, 977 (9th Cir.1982) ("[A] person leaving the United States may be stopped and searched, without probable cause or any suspicion, pursuant to border search principles."), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *see also California Bankers Ass'n v. Schultz,* 416 U.S. 21, 63, 94 S.Ct. 1494, 1518, 39 L.Ed.2d 812 (1974) (no violation of fourth amendment occurs when those entering and leaving country are examined as to their belongings and effects).

**6.** Prior to amendment, subsection (b) read as follows: "A customs officer may stop and search, without a search warrant, a vehicle ... or person entering or departing from the United States with respect to which or whom the officer has reasonable cause to believe there is a monetary instrument being transported in violation of section 5316 of this title."

**7.** In *United States v. Hernandez–Salazar,* 813 F.2d 1126, 1137 (11th Cir.1987), the Eleventh Circuit noted that "[e]very circuit that has considered the question has ruled that the rationales for the 'border exception' apply both to incoming and outgoing persons and instrumentalities." (footnote omitted). *But see United States v. Des Jardins,* 747 F.2d 499, 504 (9th Cir.1984) ("If we were free to act on our conclusions, we would rule that the search of appellant's belongings and person [when exiting the country] was unconstitutional...."), *modified in part on other grounds,* 772 F.2d 578 (1985). The *Hernandez–Salazar* court, however, declined to decide the question whether less than reasonable cause will suffice for fourth amendment purposes to justify a border search of an exiting traveler because the 1986 amendment to § 5317(b) went into effect after the date of the appellant's crimes and trial in that case.

■ Because we are no longer constrained by statute to find that reasonable cause must exist to support a routine border search of an outgoing traveler, we now turn to the policy considerations for applying the border search principle to exits. We note that both incoming and outgoing border searches have several features in common; for example, the government is interested in protecting some interest of United States citizens, there is a likelihood of smuggling attempts at the border, and the individual is on notice that his privacy may be invaded when he crosses the border. *United States v. Stanley*, 545 F.2d 661, 667 (9th Cir.1976), *cert. denied*, 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978). We also note that the underlying purpose for the foreign transaction reporting requirements was to regulate the export of monetary instruments in order to prevent the use of international currency transactions to evade domestic criminal, tax, and regulatory laws. *See California Bankers Ass'n v. Schultz*, 416 U.S. 21, 27, 94 S.Ct. 1494, 1500, 39 L.Ed.2d 812 (1974).

Given the substantial national interest in regulating the exportation of domestic currency at the border and the similar features of incoming and outgoing border-crossing searches for fourth amendment purposes, we hold that in the context of a routine stop and search for currency, the rationale applied to border searches under the fourth amendment encompasses persons exiting as well as persons entering our borders.[8] We find, therefore, that the detention and inquiry in this case was permissible under the fourth amendment.[9]

## II.

■ Berisha next argues that the evidence was insufficient to sustain his conviction for violating the reporting requirements of 31 U.S.C. § 5316(a). In order to establish guilt for failure to file a currency and monetary instrument report under 31 U.S.C. § 5316(a), the government must show that the defendant had actual knowledge of the currency reporting requirement and voluntarily and intentionally violated that known legal duty. *United States v. Salinas–Garza*, 803 F.2d 834 (5th Cir. 1986).

Berisha contends that he did not possess the requisite knowledge that a person acting as an "agent or bailee" shall file a report when such person knowingly transports a sum greater than $10,000 from a point within to a point without the United States. He argues that he believed that since he was carrying only $8,000 of his own money and $9,000 for his companion, he was not required under the statute to report the money to the authorities.

The district court concluded that the evidence established beyond a reasonable doubt that Berisha violated the reporting requirements of 31 U.S.C. § 5316(a). In evaluating a challenge to the sufficiency of the evidence, a court must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979); *United States v. Molinar–Apodaca*, 889 F.2d 1417, 1423 (5th Cir.1989).

We find ample evidence to support Berisha's conviction. The Customs inspectors took several affirmative steps to make the reporting requirements known to the defendant.[10] An announcement was played

---

**8.** We express no opinion, however, on the fourth amendment implications of routine, suspicionless searches for exportation of articles other than monetary instruments.

**9.** Berisha argues, *inter alia,* that 31 U.S.C. § 5317(b) is void for vagueness. We find no merit to this argument. Prior to its 1986 amendment, the statute included a requirement that a search be supported by "reasonable cause." *See supra* note 7. In *Hernandez–Salazar,* the defendant challenged the "reasonable

cause" language in the former statute. The court held, in that case, that "reasonable cause" was synonymous with "reasonable suspicion," and that the statute was not unconstitutionally vague. In 1986, the "reasonable cause" language was eliminated from the statute and we find nothing vague about the current provisions of that statute.

**10.** Proof of the requisite knowledge can be established when affirmative steps are taken by the government to make the law's requirements

over the public address system and currency reporting signs were posted in the boarding area. An inspector, moreover, asked Berisha if he was aware of the currency reporting requirements, to which he responded in the affirmative. The inspector specifically asked Berisha if he was carrying money for anyone else, or had other currency besides the $8,000 on his person, to which Berisha responded negatively. Furthermore, after being told that the law does not forbid taking $10,000 out of the country, but requires only a report, Berisha stated again that he had less than $10,000 and made no attempt to complete a Customs report. Viewing this evidence in the light most favorable to the verdict, we find that a reasonable jury could have found beyond a reasonable doubt that Berisha knowingly and willfully violated 31 U.S.C. § 5316(a).

### III.

Berisha further contends that the evidence was insufficient to sustain a conviction for making false statements to United States Customs inspectors under 18 U.S.C. § 1001. Applying the same standard of review as set forth in Part II above, we find the evidence sufficient to support the jury's conclusion that Berisha knowingly and willfully made a false or fraudulent statement to officers of the United States Customs Service. As stated above, the investigators expressly asked Berisha if $8,000 was all the money he had on his person and Berisha responded in the affirmative, despite the fact that he actually was carrying $17,000.

Berisha argues that under this court's holding in *United States v. Schnaiderman*, 568 F.2d 1208 (5th Cir. 1978), his false statement to the Customs officers falls within the "exculpatory no" exception to 18 U.S.C. § 1001. The "exculpatory no" exception exempts certain negative exculpatory responses to questions propounded by investigating agents from prosecution under 18 U.S.C. § 1001. Although the facts of *Schnaiderman* support the court's exemption of that defendant from the reach of § 1001, we find the facts of this case do not similarly shield Berisha.

In *Schnaiderman*, the court noted that affirmative steps were not taken to inform the defendant of the reporting requirements. For that reason, the court held that a jury could not have found beyond a reasonable doubt that Schnaiderman knew of, and therefore willfully violated, the reporting requirements. Unless the threshold knowledge and willful violation could be established as to the reporting requirements, the court could not find Schnaiderman guilty of knowingly making false representations.

Specifically, the court pointed to the fact that Schnaiderman had not been advised of the consequences of an affirmative answer to the question whether he was carrying in excess of $5,000. Consequently, Schnaiderman's negative response might have been based on a belief that the mere transport of such a large sum of money is in itself illegal. In this case, unlike *Schnaiderman*, Berisha was told that it was not against the law to take more than $10,000 out of the country. The fact that Berisha continued to assert that he had less than $10,000, even after being disabused of any potential belief that carrying a large sum of money was itself illegal, precludes him from raising the "exculpatory no" exception.[11] We find, therefore, that the "exculpatory no" exception does not apply in this case, and that the evidence suffices to sustain Berisha's conviction for violation of 18 U.S.C. § 1001.

### IV.

Berisha argues, finally, that under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the failure of

known. *United States v. Granda*, 565 F.2d 922, 926 (5th Cir.1978).

11. As this court explained in *Schnaiderman*, "asking a traveler whether he is carrying more than [$10,000] inspires the belief that it is illegal to bring large sums of money [out of] the United States. When customs officials do not disabuse travelers of that belief, an exculpatory 'no' response to the question is outside the scope of 18 U.S.C.A. § 1001." 568 F.2d at 1214.

the Customs agents to warn him of his fifth amendment rights prior to questioning him rendered his responses to those questions inadmissible. We find this argument to be without merit.

 This court has recognized that "[t]he *Miranda* requirement is not ... applicable to every situation where law enforcement officers are asking questions." *United States v. Henry*, 604 F.2d 908, 915 (5th Cir.1979). Rather, it is "the compulsive or coercive aspects of a custodial situation which triggers the *Miranda* requirement...." *Id.* Thus, this court has held that *Miranda* warnings are unnecessary during routine questioning and searches by customs agents. *Id.*

In a case with facts quite similar to the case at bar, the Second Circuit held that *Miranda* warnings were not required where, after a routine inquiry by a border inspector, the defendant was directed to a secondary inspection area for further questioning. As the court stated, "although there was a detention of appellant with attendant questioning by immigration and customs officials, the circumstances surrounding the inquiry (namely, a border detention) and the routine questions asked ... did not require the giving of *Miranda* warnings." *United States v. Silva*, 715 F.2d 43, 47 (2d Cir.1983).

This court has adopted the test that "[a] suspect is ... 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir.), *cert. denied*, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988). We stated in that case that "a Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda*."

*Id.* at 598. Rather, "custody arises only if the restraint on freedom is a certain degree—the degree associated with formal arrest." *Id.* We noted that stops which are "presumptively temporary and brief" and operated in a "regularized manner" with "advance notice" and "visible signs of authority" tend not to instill the perception of restraint necessary to trigger *Miranda* requirements. Because we find that Berisha's detention was characterized by such factors, and the interrogation amounted to a routine inquiry, the district court properly refused to suppress evidence of Berisha's comments.[12]

## V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

12. Berisha's only statements at issue were that he was with a traveling companion and that the trip was for pleasure. Subsequent to these statements, Berisha was given a *Miranda* warning. Although we find no *Miranda* violation in this case, we note that because these answers did not admit any element of the offense charged and were wholly non-incriminating, we would in any event have found the admission of those statements to be harmless error. *See Charles v. Smith*, 894 F.2d 718 (5th Cir.1990) (admission of statement obtained in violation of defendant's *Miranda* rights constituted mere harmless error).