OPINION OF THE COURT
Hancock, Jr., J.
This appeal requires us to determine the level of suspicion, if any, necessary under the Federal and State Constitutions to justify singling out an entrant at the national border for a pat-down search. Defendant contends that the same "reasonable suspicion” required for stops and frisks in domestic situations should apply (see, Terry v Ohio, 392 US 1, 30; People v La Pene, 40 NY2d 210, 223). The People argue that pat downs are merely incidental to routine border searches for which no justification is required other than the fact that they occur at the border (see, United States v Ramsey, 431 US 606, 619). We agree with neither position. However, for the reasons which follow, we do hold that the pat-down search in this case *175 was constitutionally reasonable and, consequently, that the evidence seized was admissible.
At 3:15 a.m. on April 14, 1985, Customs Inspector Brian Quinn was processing passengers from an international flight from Ecuador which had just arrived at the American Airlines Terminal at Kennedy Airport in New York City. Defendant, a 48-year-old Ecuadorian apparently traveling alone, approached the inspection station and presented his passport and luggage. Quinn questioned defendant about his trip but, because defendant did not appear to understand English, the two communicated through hand gestures.
Quinn thought defendant appeared "agitated” and "nervous”. His hands were shaking and his face seemed contorted; he kept shifting from foot to foot and was glancing around the room as if to avoid eye contact. Defendant did not interfere with the inspection and there seemed nothing unusual about his passport or the particular items in his single suitcase. But defendant’s appearance and behavior, as well as the fact that he was traveling alone from a "high-profile” country, led Quinn, a seven-year veteran of the customs service, to suspect that defendant was a drug courier.
Quinn directed defendant to a nearby room where he patted him down. When Quinn discovered a bulge around each of defendant’s ankles, he removed two packets of cocaine and placed defendant under arrest. Defendant was subsequently charged with criminal possession of a controlled substance in the first degree.
At trial, defendant moved to suppress the evidence on the ground that Officer Quinn did not have the requisite "reasonable suspicion” to justify a stop and frisk. The hearing court denied the motion finding that defendant’s origination from a "drug export” country and his nervous appearance supported a "minimal” level of suspicion sufficient for a pat down at the border.[1] Subsequently, defendant was convicted on his guilty plea to the lesser charge of criminal possession of a controlled substance in the second degree. On appeal, the Appellate Division affirmed, citing People v Materon (107 AD2d 408) and concluding that the customs officer possessed "articulable suspicion” justifying the pat down. We now affirm.
*176 It is settled that a routine inspection of luggage and other belongings at the national border, conducted without a warrant or even probable cause, does not violate the constitutional proscriptions against unreasonable searches and seizures (see, United States v Ramsey, supra, at 616; People v Dworkin, 30 NY2d 706). The paramount interests in national security and preventing contraband from entering the country render such routine inspections "reasonable” solely because they involve persons or items crossing our borders (see, United States v Ramsey, supra, at 616; United States v Thirty-Seven Photographs, 402 US 363, 376; Carroll v United States, 267 US 132, 153-154). At the border, an entering individual’s constitutionally protected privacy is necessarily diminished, and the balancing of rights and interests is struck more favorably to governmental concerns (see, United States v Montoya de Hernandez, 473 US 531, 539-540; Carroll v United States, supra, at 154).
Thus, the brief detention of incomers and the inspection of their luggage and other property is constitutionally permissible at border crossings without any suspicion of criminal activity (see, United States v Montoya de Hernandez, supra, at 537-538; United States v Thirty-Seven Photographs, supra, at 376; People v Dworkin, supra); other privacy intrusions of greater degree require some justification, but less than is required in the interior (see, United States v Montoya de Hernandez, supra, at 538; United States v Ramsey, supra, at 619; United States v 12 200-Ft. Reels of Film, 413 US 123, 125). Indeed, under the Terry standard of "reasonable suspicion”, the Supreme Court in Montoya de Hernandez approved a prolonged and humiliating detention of an incomer who was held by customs agents to determine, through her natural bodily processes, whether or not she was carrying narcotics internally (see, United States v Montoya de Hernandez, supra, at 544). Applying the Terry standard, the Supreme Court found the detention justified because the customs officials had a " 'particularized and objective basis for suspecting the particular person’ of alimentary canal smuggling” (id., at 541-542, quoting United States v Cortez, 449 US 411, 417, 418, citing Terry v Ohio, 392 US, at 21, n 18, supra).
Although the defendant in Montoya de Hernandez was subject to a pat down, strip search, and rectal examination during her detention, the validity of those searches was not in issue. Significantly, the Supreme Court noted that it was taking "no view on what level of suspicion, if any, is required *177 for nonroutine border searches such as strip, body-cavity, or involuntary x-ray searches” (id., at 541, n 4 [emphasis added]); the court did not even mention pat downs. Hence, it remains unclear whether the Supreme Court considers pat downs part of the "[r]outine searches of the persons and effects”, which "are not subject to any” justification (id., at 538), or considers them a form of "limited intrusion” beyond the "routine customs search and inspection”, which must rest on some level of suspicion (id., at 541). Nor is it clear whether it would make a difference if an individual is singled out from among others for the pat down.[2]
While we, too, have yet to address the requirements for border pat downs, other courts, both New York and Federal have done so. Their opinions differ, however, as to the quantum of suspicion, if any, that is required.
The most prevalent view appears to be that "no suspicion” is required — i.e., that the relatively minor intrusion of a pat down needs no more justification than that the person is entering the country (United States v Braks, 842 F2d 509, 514 [1st Cir]; see also, United States v Sandler, 644 F2d 1163, 1167 [5th Cir]; United States v Oyekan, 786 F2d 832, 835 [8th Cir]; United States v Vega-Barvo, 729 F2d 1341, 1345 [11th Cir]; United States v Mabie, 580 F Supp 1382 [ED NY]). The rationale advanced in support of this position is that anything "less intrusive than a strip search” is routine at the border (United States v Kallevig, 534 F2d 411, 413, n 4 [1st Cir]), that "a pat-down or frisk fall within this category” (United States v Vega-Barvo, supra, at 1345; see also, United States v Nieves, 609 F2d 642, 645-646 [2d Cir]), and that a pat down involves "little indignity or embarrassment * * * it is no worse than having a stranger rummage through one’s luggage, a practice which is clearly acceptable” (United States v Sandler, supra, at 1167 [5th Cir]). There are other views.
Judging a pat down or frisk to be somewhat more intrusive than being "required to disclose the contents of his or her baggage” (United States v Des Jardins, 747 F2d 499, 504 [9th *178 Cir]), a number of courts have held that customs officers must have some suspicion of criminal activity before proceeding. Denominating the level of necessary suspicion as simply "some” (United States v Dorsey, 641 F2d 1213, 1218 [7th Cir]), "mere” (United States v Grayson, 597 F2d 1225, 1228 [9th Cir]), "minimal” (United States v Couch, 688 F2d 599, 604 [9th Cir]), or "articulable” (People v Materon, 107 AD2d 408, 413, supra; see also, People v Rivera, 143 AD2d 783), these courts have reasoned that a pat down constitutes a significant interference with personal privacy and dignity. Though certainly not as invasive or degrading as a strip search, cavity search, or prolonged involuntary detention, a pat down is, nonetheless, according to this view, an intrusion on one’s privacy sufficiently greater than that involved in a routine inspection of luggage to require some minimal level of particularized suspicion. We agree.
Although the usual restrictions on searches and seizures are relaxed at the border, individuals presenting themselves for entry into this country are not entirely without constitutional protection (United States v Montoya de Hernandez, supra, at 539; see also, id., at 560 [Brennan, J., dissenting]; United States v Brignoni-Ponce, 422 US 873, 881; United States v Sanders, 663 F2d 1, 3; People v Materon, supra, at 413). While routine detentions, inspections, and questioning at the border may be conducted without any particularized justification, constitutionally protected privacy is not so diminished there that an individual should not be free from being singled out for an extended detention and full body pat down at the whim of a customs officer. There must be some justification for nonroutine investigations involving additional "intrusions on privacy and indignities” (United States v Dorsey, supra, at 1218; see, Terry v Ohio, supra, at 17 [a frisk is a "serious intrusion upon the sanctity of the person * * * and not to be undertaken lightly”]).
The reasonableness of a border intrusion must be evaluated —with full consideration of the government’s heightened interests — by weighing the degree of that intrusion against the level of suspicion sought to justify it (see, United States v Asbury, 586 F2d 973, 976; United States v Brown, 499 F2d 829, 833, cert denied 419 US 1047; United States v Guadalupe-Garza, 421 F2d 876, 878). While singling out an individual for a "stop and frisk” is not comparable to the kind of detention and search involved in Montoya de Hernandez which, the Supreme Court held, may be justified by "reasonable suspi *179 cion” (473 US, at 541, supra), it certainly cannot be dismissed as a mere trifling intrusion (see, United States v Dorsey, supra, at 1218; United States v Grayson, 597 F2d 1225, 1228). One cannot equate the invasion of personal privacy in taking an incomer aside and subjecting that person to the physical probing of a full body frisk with the intrusion incident to a normal border luggage inspection. Hence, albeit a limited intrusion, we believe that a pat down at the border must be justified by some level of suspicion. In light of the strong government interests at the border, however, that level of suspicion need not be as objectively clear as that usually required for a stop and frisk.
As other courts which have struggled with this question have found, the level of suspicion justifying a border pat down is not susceptible to facile or precise formulation. Regardless of the label employed, however, we believe that the suspicion need only be real and based upon legitimate factors. The suspicion giving rise to the pat down must not be a guise for harassment or caprice (see, United States v Ramos, 645 F2d 318; United States v Nieves, 609 F2d 642, 648, n 10, supra);[3] and, of course, it must not be based on factors that are either improper or arbitrary, such as race or gender[4] (see, United States v Asbury, 586 F2d 973, 976-977, supra; United States v Nieves, supra, at 647, n 9). But, in view of the special concerns at the border, more than that ought not to be required.
For these reasons, we believe that under the Fourth Amendment of the Federal Constitution, a pat-down search of an entrant singled out at the border is justified if, but only if, it is supported by some such suspicion. Moreover, we decline defendant’s invitation to hold that a higher level of suspicion for *180 this kind of search is required under the State Constitution. Hence, evidence seized as a result of a pat down, conducted by customs officers on the basis of such suspicion, may be admitted against the incomer in a criminal prosecution in the courts of this State (cf., People v Griminger, 71 NY2d 635, 641; People v Ridgeway, 64 NY2d 952).
Applying the foregoing principles to the facts of this case, we have little difficulty in concluding, as did the courts below, that the pat down which led to the seizure of cocaine from defendant’s person was justified. Defendant had just arrived alone, carrying a single suitcase, on a flight originating from a distant country believed to be a major source of illegal narcotics. His behavior was agitated and he appeared nervous. Viewed cumulatively, these circumstances were sufficient to create in the mind of an experienced customs inspector a bona fide suspicion of criminal activity, thereby justifying the limited intrusion and indignity to defendant of being singled out for a pat-down search.
Accordingly, the order of the Appellate Division should be affirmed.

. The court also held that the customs inspection station at Kennedy International Airport was the functional equivalent of the national border. This holding is not in dispute (see, Almeida-Sanchez v United States, 413 US 266, 273).

. In this regard, the dissenting opinion of Justice Brennan refers to "[travelers at the national border [being] routinely subjected to questioning, patdowns, and thorough searches of their belongings [which] do not violate the Fourth Amendment [emphasis added]”. Citing Terry v Ohio (392 US 1), however, Justice Brennan’s opinion then states that individuals "may be singled out on 'reasonable suspicion’ and briefly held for further investigation” (United States v Montoya de Hernandez, 473 US 531, 551 [emphasis added]).

. In Ramos, the court upheld a border pat down on the ground that it represented the "subjective response of a customs inspector who concluded in good faith, and absent a whisper of improper motive, that a secondary examination was in order” (645 F2d 318, 322 [emphasis added]). Similarly in Nieves, the court noted that the agents who conducted the pat down and detention were neither "harassing], intimidat[ing] or humiliating] the [suspect] in any way” (609 F2d 642, 648, n 10).

. In Asbury, the court listed 12 factors that might be taken into account in determining whether an intrusion at the border was justified. Among these are: excessive nervousness, unusual conduct, an itinerary suggestive of wrongdoing, inadequate luggage, evasive or contradictory answers, and the discovery of incriminatory matter during the routine inspection. In Nieves, the same court held that an "investigative stop” at the border must be supported by " 'rational inferences’ ” drawn from the facts (609 F2d, at 647, n 9 [emphasis added], quoting Terry v Ohio, 392 US 1, 21).