UNITED STATES of America, Appellee,

v.

**Jean Eddy CHARLEUS and Jean Michel Louis, Defendants,**

**Jean Eddy Charleus, Appellant.**

**No. 797, Docket 88–1259.**

United States Court of Appeals, Second Circuit.

Argued Feb. 14, 1989.

Decided March 23, 1989.

Jack Wenik, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., and John Gleeson, Asst. U.S. Atty., on the brief), for appellee.

John M. Apicella, Brooklyn, N.Y. (Salvatore S. Russo, on the brief), for appellant.

Before TIMBERS, PIERCE, and MINER, Circuit Judges.

TIMBERS, Circuit Judge:

Jean Eddy Charleus ("appellant") appeals from a judgment of conviction entered June 8, 1988 in the Eastern District of New York, Edward R. Korman, *District Judge*, upon a jury verdict of guilty on charges of conspiracy to import, importation of, and possession with intent to distribute in excess of 500 grams of a substance containing cocaine, a Schedule II controlled substance, in violation of 21 U.S. C. §§ 963, 952(a), and 841(a)(1) (1982 & Supp. IV 1986). A pretrial motion to suppress the evidence seized during a border search of appellant and his companion was denied by I. Leo Glasser, *District Judge*. Appellant was sentenced to three concurrent five year terms of imprisonment, to be followed by a total of four years of supervised release.

On appeal from his judgment of conviction, appellant contends that (a) the cocaine evidence should have been suppressed because there was no reasonable suspicion to justify the search and seizure; (b) he was sentenced improperly; and (c) appellant's defense of duress was established as a matter of law. The government contends that (a) the customs search was a proper routine border search, or, alternatively, it was supported by reasonable suspicion; (b) appellant was sentenced properly; and (c) the jury properly rejected the defense of duress.

For the reasons set forth below, we affirm the judgment of conviction and the sentence imposed thereon.

I.

We set forth only those facts believed necessary to an understanding of the issues raised on appeal.

On November 3, 1987, appellant and his male companion, Jean Michel Louis ("Louis"), arrived at JFK International Airport in New York aboard American Airlines Flight 658 from Port–Au–Prince, Haiti. As the passengers were disembarking, United States Customs Inspector Stanley Moculeski ("Moculeski"), who was in uniform, noticed appellant and Louis deplaning together. Moculeski noticed that when Louis saw him in full uniform, Louis became startled and nervous, and hesitated before entering the jetway. When Moculeski saw Louis' reaction, he approached him and touched him on the back with his left hand. Moculeski immediately felt a hard lump under Louis' clothing and, after taking him to the side of the jetway and lifting up the back of his shirt, discovered packages tightly taped around Louis' back and waist containing what later was determined to be cocaine. Louis was then placed under arrest.

After recalling that Louis had been accompanied by appellant, Moculeski proceeded down the jetway to look for him. Mo-

culeski caught up with appellant as he was on his way into the immigration check-in area. Moculeski identified himself as a United States Customs Inspector. He put his hand on appellant's back and felt a hard lump similar to the one he had felt on Louis. He had appellant stand facing a wall, lifted up the back of his shirt, and discovered packages tightly taped around appellant's back and waist containing what later was determined to be cocaine. Appellant was then placed under arrest.

Louis and appellant were taken to a small room to the side of the jetway. Moculeski informed them of their rights. He then seized the packages of cocaine taped to their bodies and various documents in their possession. The total cocaine seized approximated 6½ pounds. With the consent of Louis and appellant, a controlled delivery later was attempted but it was unsuccessful.

Louis and appellant were charged in a three count indictment returned November 19, 1987 with the narcotics offenses stated in the first paragraph of this opinion. At a hearing held on January 5, 1988, Judge Glasser denied a motion to suppress the evidence seized at the airport, including the cocaine, holding that the customs inspector had conducted a proper border search. Appellant was convicted on the three counts of the indictment following a jury trial before Judge Korman and was sentenced as stated above.[1] This appeal followed.

For the reasons set forth below, we affirm.

## II.

The Supreme Court has made it clear that border searches are subject to standards different from those applicable to other searches:

"[S]earches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border...."

*United States v. Ramsey,* 431 U.S. 606, 616 [97 S.Ct. 1972, 1978, 52 L.Ed.2d 617] (1977); *see also United States v. Montoya de Hernandez,* 473 U.S. 531, 538 [105 S.Ct. 3304, 3309, 87 L.Ed.2d 381] (1985) ("Routine searches of the persons and effects of [border] entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant....").

■ We accordingly have held that routine border searches of the personal belongings and effects of entrants may be conducted without regard to probable cause or even reasonable suspicion. *United States v. Ogberaha,* 771 F.2d 655, 657 (2 Cir.1985), *cert. denied,* 474 U.S. 1103 [106 S.Ct. 887, 88 L.Ed.2d 922] (1986); *United States v. Grotke,* 702 F.2d 49, 51 (2 Cir. 1983). Personal belongings and effects have been defined as including outer clothing and the contents of purses, wallets, or pockets. *Grotke, supra,* 702 F.2d at 51; *United States v. Nieves,* 609 F.2d 642, 646 (2 Cir.1979), *cert. denied,* 444 U.S. 1085 [100 S.Ct. 1044, 62 L.Ed.2d 771] (1980); *United States v. Asbury,* 586 F.2d 973, 975 n. 2 (2 Cir.1978). More intrusive border searches of the person such as body cavities searches or strip searches, however, require at a minimum reasonable suspicion of criminal activity. *Ogberaha, supra,* 771 F.2d at 658–60 (body cavity search); *United States v. Sanders,* 663 F.2d 1, 3 (2 Cir.1981) (artificial leg).

■ In the instant case, it is undisputed that the search was conducted at the border. *United States v. Luc–Thirion,* 501 F.Supp. 875, 879 (E.D.N.Y.1980) (search conducted close to the customs inspection belt and in the JFK International Arrivals Building was at the "border"). Reasonable suspicion therefore was not required before the customs inspector could search Louis' and appellant's clothing and belongings; yet it was required before a more intrusive search of their person could be conducted.

1. Louis pled guilty on January 4, 1988 to a charge of importation of cocaine set forth in a superseding information. He later was sentenced by Judge Glasser to a 41–month term of imprisonment followed by three years of supervised release.

The light touching of appellant's back followed by a lifting of his shirt arguably straddles the line between the two categories of border searches—searching more than personal belongings or effects such as a purse, wallet, or even outer jacket was involved; but the search was not nearly as intrusive as a body cavity or full strip search.

We believe that a close examination of the case law in this Circuit and elsewhere indicates that the search here in question may be characterized correctly as a routine border search not requiring reasonable suspicion. *Grotke, supra,* 702 F.2d at 51–52 (patdown followed by removal of shoes held " 'minimally intrusive' " routine border search, quoting *Nieves, supra,* 609 F.2d at 646); *United States v. Moody,* 649 F.2d 124, 126–27 (2 Cir.1981) (border "patdown" followed by request that defendant pull down girdle in private room did not necessarily require reasonable suspicion); *Luc-Thirion, supra,* 501 F.Supp. at 878–79 (removal of jacket and patdown of border entrant did not require reasonable suspicion); *see also United States v. Braks,* 842 F.2d 509, 512–15 (1 Cir.1988) (lifting up of skirt by defendant in private room reveal-

ing bulge of drugs in girdle, held part of routine border search and did not necessarily require any degree of suspicion); *United States v. Oyekan,* 786 F.2d 832, 835 (8 Cir.1986) (initial patdown followed by search of defendants' luggage and purses held routine border search); *cf. United States v. Fitzgibbon,* 576 F.2d 279, 281, 284 (10 Cir.) (patdown followed by request that defendant remove boot not equivalent to "strip search"), *cert. denied,* 439 U.S. 910 [99 S.Ct. 279, 58 L.Ed.2d 256] (1978).

We have held that "[N]ot every request that a person remove an article of clothing or remove objects from an article of clothing will result in the automatic transformation of a routine search of belongings and effects into a strip search". *Nieves, supra,* 609 F.2d at 646. Since the potential indignity resulting from a pat on the back followed by a lifting of one's shirt simply fails to compare with the much greater level of intrusion associated with a body cavity or full strip search, we decline to hold that reasonable suspicion was here required.[2]

■ Even if we were to assume arguendo that the search here involved was not a

---

2. A week after oral argument in the instant case, the New York Court of Appeals held that "some" suspicion of criminal activity is required before a patdown border search can be conducted. *People v. Luna,* 73 N.Y.2d 173, 179, 535 N.E.2d 1305, 1309, 538 N.Y.S.2d 765, 769 (1989). The court held that, since a full patdown is more intrusive than a search of luggage or other belongings yet less intrusive than a body cavity or full strip search, an intermediate level of suspicion between no suspicion at all and reasonable suspicion is required. The court, applying its newly fashioned standard of "real" suspicion based upon "legitimate factors", concluded that the border patdown there involved passed constitutional muster. *Id.* at 177–80, 535 N.E. 2d at 1308–09, 538 N.Y.S.2d at 768–69.

We are not persuaded by this new standard which appears to have been fashioned in contravention of the Supreme Court's express warning in *Montoya* against the development of multiple gradations of suspicion to be applied to different types of border searches:

"We do not think that the Fourth Amendment's emphasis upon reasonableness is consistent with the creation of a third verbal standard in addition to 'reasonable suspicion' and 'probable cause'; we are dealing with a constitutional requirement of reasonableness, not *mens rea,* and subtle verbal gradations

may obscure rather than elucidate the meaning of the provision in question".

*Montoya, supra,* 473 U.S. at 541 [105 S.Ct. at 3310] (citation omitted); *see also Ogberaha, supra,* 771 F.2d at 658 (rejecting intermediate levels of suspicion for conducting strip searches in light of *Montoya* ); *cf. Luna, supra,* at 181, 535 N.E.2d at 1310, 538 N.Y.S.2d at 770 (Bellacosa, J., concurring) (rejecting the majority's "new low level suspicion standard" as one which improperly "dilutes the potency" of existing standards under the Fourth Amendment).

In our view, the Supreme Court's warning in *Montoya* applies equally to the creation of new standards based on levels of suspicion between "no suspicion" and "reasonable suspicion". While the Court has not set forth precisely what constitutes a routine border search, it has made clear that border searches fall into two classes: routine border searches which require no suspicion at all and intrusive non-routine border searches which require at a minimum reasonable suspicion.

The limited patdown in the instant case may be categorized correctly as a routine border search requiring no level of suspicion at all. In any event, assuming a "reasonable suspicion" or even *Luna's* "some" suspicion standard were applicable here, the search of appellant nonetheless passes muster.

routine border search, application of the "reasonable suspicion" standard would result in the search nonetheless being held valid. In determining whether there is reasonable suspicion, we have weighed a number of factors, including excessive nervousness of the suspect, whether the suspect's flight originated at a known source of drugs, the nature of the suspect's clothing, and the discovery of incriminating material during a routine search. *Asbury, supra,* 586 F.2d at 976–77; *see also Ogberaha, supra,* 771 F.2d at 658–59.

Here, Moculeski knew that appellant and Louis had flown from Haiti—a well-known source or trans-shipment point for narcotics—on a flight that was notorious for cocaine smuggling. He had observed loose-fitting and bulky clothing on both suspects, and had observed the nervous demeanor of Louis. Moculeski was an experienced customs inspector who, at the time of appellant's arrest, had had 11 years of experience in detecting illegal drug traffickers. *See Ogberaha, supra,* 771 F.2d at 659. Not only was the initial "pat" on the back justified, but the discovery of a protrusion underneath the shirt clearly gave rise to reasonable suspicion to justify lifting up the shirt. *United States v. Klein,* 592 F.2d 909, 911–12 & n. 6 (5 Cir.1979) (routine patdown which revealed unusual protrusion under shirt followed by removal of shirt held reasonable border search); *Luc–Thirion, supra,* 501 F.Supp. at 879 (same). The fact that Louis was searched before appellant and that appellant himself was not nervous does not change the result, since the fact that the two had exited the plane together provided sufficient cause to suspect that they might both be involved in the same drug operation. *Nieves, supra,* 609 F.2d at 647; *Asbury, supra,* 586 F.2d at 977.

We hold that the patdown border search of appellant passes constitutional muster under the Fourth Amendment.

## III.

We turn next to appellant's claim that his sentence is invalid because it was imposed pursuant to the wrong statute. Appellant was sentenced pursuant to the Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1987 ("SRA"). He argues that this was improper because (1) the penalty provisions of the SRA were not intended to apply until December 7, 1987, the effective date of the Sentencing Act of 1987, Pub.L. No. 100–182, 101 Stat. 1266 ("1987 Act"); and (2) the SRA is unconstitutional. We find no merit in either argument.

While the 1987 Act states that the provisions of the SRA are not applicable to crimes committed *before* November 1, 1987, in interpreting the SRA and the 1987 Act, we have recognized that the SRA is applicable to offenses committed on or *after* November 1, 1987. *United States v. Argitakos,* 862 F.2d 423, 424–25 (2 Cir.1988) (per curiam); *see also* President's Statement on Signing the Sentencing Act of 1987 Into Law, 23 *Weekly Comp. Pres. Doc.* 1452, 1453 (Dec. 7, 1987), *reprinted in* 1987 U.S.Code Cong. & Admin.News 2135. Since appellant's offense took place on November 3, 1987, he properly was sentenced pursuant to the SRA. The effective date of the 1987 Act therefore has no bearing on the imposition of appellant's sentence.

As the government correctly states, even if the SRA were inapplicable to appellant, he would have received the same sentences under §§ 1002 and 1302 of the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207, which require five year minimum sentences on convictions such as those here involved.

Appellant's claim that the SRA violates the separation of powers doctrine is unavailing in view of the Supreme Court's recent rejection of that very claim. *Mistretta v. United States,* [—— U.S. ——] 109 S.Ct. 647 [102 L.Ed.2d 714] (1989).

We hold that appellant was sentenced properly under the SRA which does not violate the Constitution's requirement of the separation of powers.

## IV.

At trial, appellant adduced evidence in support of his defense of duress that he had been forced to carry the cocaine into

the United States by a Haitian acquaintance who had threatened him and his family with harm if he did not cooperate and that he had not contacted the Haitian police because they are corrupt. After hearing this evidence and after being instructed on the elements of duress, the jury rejected the defense.

Appellant argues that he established the defense as a matter of law, citing *United States v. Contento–Pachon*, 723 F.2d 691 (9 Cir.1984). *Contento–Pachon* is inapposite, however, since the court there merely held that it was error for the district court to have excluded from the jury the defendant's presentation of evidence in support of his defense of duress. *Id.* at 695.

In the instant case the district court did receive the alleged defense evidence. The jury heard the evidence, assessed the credibility of the witnesses, chiefly appellant, and found the facts against appellant's claim. The verdict rendered indicates that, as was their prerogative, the jury simply chose not to credit the testimony adduced by appellant. On appeal, appellant in effect argues that the verdict was against the weight of the evidence. We disagree. Furthermore, since appellant declined to pursue "a reasonable, legal alternative to violating the law", *i.e.*, surrendering to Moculeski, his defense fails as a matter of law. *United States v. Bailey*, 444 U.S. 394, 410 [100 S.Ct. 624, 62 L.Ed.2d 575] (1980); *see United States v. Alicea*, 837 F.2d 103, 106–07 (2 Cir.), *cert. denied*, [—— U.S. ——] 109 S.Ct. 88 [102 L.Ed.2d 64] (1988); *United States v. Agard*, 605 F.2d 665, 667 (2 Cir.1979).

We hold that the jury's rejection of the defense of duress was not error.

### V.

To summarize:

The search of appellant passes constitutional muster, his sentence was proper, and the jury's rejection of his defense of duress was not error.

Affirmed.