35 F.3d 557
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barbara Jean SANDERS, Defendant-Appellant.
 No. 93-5806.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 23, 1994.
Decided Sept. 14, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CR-93-9-5-BO)
 Joan A. Hill-McClain, Chicago, IL, for appellant.
 Janice McKenzie Cole, U.S. Atty., J. Douglas McCullough, Asst. U.S. Atty., Jeanne M. Hill, Third-Year Law Student, Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILLIAMS and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Barbara Jean Sanders pled guilty to importation of cocaine, 21 U.S.C.A. Sec. 952 (West 1981 & Supp.1994), reserving the right to appeal the denial of her motion to suppress cocaine which was found by customs officials when she returned from two weeks in Cancun, Mexico.[1] She was sentenced to a term of 105 months.
 
 
 2
 Sanders appeals her conviction, claiming that customs officials lacked reasonable suspicion to subject her to a pat-down search in the airport. She also contends that the district court clearly erred in refusing to grant her a reduction in offense level for having a minor role in the offense. United States Sentencing Commission, Guidelines Manual, Sec. 3B1.2 (Nov.1992). We affirm.
 
 
 3
 When Sanders deplaned at Raleigh-Durham Airport on December 17, 1992, the customs agent, Carolyn Riggsbee, observed that she was visibly nervous, sweating profusely, and that her hands were shaking. Riggsbee referred Sanders to a table nearby for secondary questioning. Rachel Statem (aka Shirley French), the passenger who had been questioned just before Sanders, had exhibited similar signs of nervousness, and had also been referred for secondary questioning. After waiting some minutes, during which time Riggsbee and her supervisor saw that both women remained in a state of unusual anxiety, Riggsbee was told to conduct a pat-down of both Statem and Sanders.
 
 
 4
 The pat-down of Statem disclosed that she was carrying a kilogram of cocaine strapped to her inner thigh. When Sanders was patted down, Riggsbee felt a hard object in the same place. She asked Sanders to lift her skirt, saw a bulge under her girdle, and asked Sanders to remove it. The package was wrapped in duct tape, as was Statem's package, and also contained cocaine.
 
 
 5
 The magistrate judge who conducted the suppression hearing recommended that the search was a routine border search outside the requirements of the Fourth Amendment and that, even if the pat-down was a non-routine search, it was justified by reasonable suspicion. On Sanders' objection, the district court adopted the magistrate judge's recommendation and held that the pat-down was a routine search, and was supported by reasonable suspicion in any case.
 
 
 6
 Routine border searches may be conducted without a showing of any level of suspicion. United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985). For detention going beyond the scope of a routine search, reasonable suspicion is required. Id. at 541. The Supreme Court did not define "routine search" in Montoya de Hernandez. However, only strip searches and body cavity searches have consistently been considered sufficiently intrusive to be non-routine. See United States v. Braks, 842 F.2d 509, 511-13 (1st Cir.1988).
 
 
 7
 Before Montoya de Hernandez was decided, a number of circuits required a low level of suspicion to justify a pat-down search. Sanders relies on two of these decisions, United States v. Dorsey, 641 F.2d 1213, 1219 (7th Cir.1981), and United States v. Palmer, 575 F.2d 721, 723 (9th Cir.), cert. denied, 439 U.S. 875 (1978),[2] and contends that the customs agents lacked reasonable suspicion that she was engaged in criminal activity when they searched her. However, since Montoya de Hernandez, circuit decisions suggest that a pat-down search is completely routine, requiring no level of suspicion. See Braks, 842 F.2d at 513; United States v. Carreon, 872 F.2d 1436, 1442 (10th Cir.1989); United States v. Charleus, 871 F.2d 265, 267-68 (2d Cir.1989).
 
 
 8
 Even if some suspicion was necessary to justify a pat-down of Ms. Sanders, the district court did not err in finding that the requirement was met. Sanders exhibited unusual nervousness as she approached the customs station, a factor which is enough to support a non-routine search. Carreon, 872 F.2d at 1442.
 
 
 9
 Sanders argues that "the inspector felt around Ms. Sanders private areas" and "required Ms. Sanders to expose her genital area." However, these statements do not correspond to the evidence produced at the suppression hearing. Agent Riggsbee stated that she started her pat-down of each leg at the thigh and did not search the crotch area. Sanders did not testify otherwise. The district court found that Riggsbee avoided searching the crotch area.
 
 
 10
 Because the district court's factual finding is supported by the evidence and it did not err in finding that the search was justified by reasonable suspicion if such was required, its denial of the motion to suppress was not error.
 
 
 11
 After her guilty plea, Sanders refused to provide any information to the probation officer about her involvement in the offense. However, later investigation showed that Sanders and Statem stayed at the same hotel in Cancun, Mexico, although both told the customs inspector they were traveling alone. Sanders had a picture and the address of Archie Lee Donley, another passenger on the same plane who had cleared customs before she deplaned. Donley had undergone brief secondary questioning because he hesitated when asked whether he was traveling alone. Sanders also had a journal which referred to a previous trip to Mexico and mentioned that she was not allowed to write letters while in Mexico.
 
 
 12
 Sanders' attorney objected when the probation officer did not recommend a minor role adjustment under U.S.S.G. Sec. 3B1.2. At the sentencing hearing, defense counsel argued that Sanders' role was merely that of a mule, but the district court found that it had no basis for so finding. We review its factual determination for clear error.
 
 
 13
 A drug courier is not entitled to an automatic reduction in offense level as a minor participant. She must make a showing that she has lesser culpability as compared to other members of the organization.
 
 
 14
 United States v. Gordon, 895 F.2d 932, 935 (4th Cir.), cert. denied, 498 U.S. 846 (1990). Sanders had the burden of proving by a preponderance of the evidence that she was entitled to the adjustment. Id. However, she refused to provide any information about the others involved in the offense. Therefore, the district court did not clearly err in denying her the adjustment.
 
 
 15
 We affirm the conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Sanders was initially charged with possession of 2.73 pounds of cocaine with intent to distribute (21 U.S.C.A. Sec. 841 (West 1981 & Supp.1994)), conspiracy to possess cocaine with intent to distribute (21 U.S.C.A. Sec. 846 (West Supp.1994)), and conspiracy to import cocaine (21 U.S.C.A. Sec. 963 (West Supp.1994)). The additional charges were dismissed after her plea
 
 
 [2]
 Another case cited by Sanders, United States v. Rodriguez, 976 F.2d 592, amended, 997 F.2d 1306 (9th Cir.1992), does not involve a patdown search