**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Manfred SWAROVSKI, Defendant-Appellant.**

**No. 245, Docket 78–1202.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1978.

Decided Feb. 8, 1979.

Edward R. Korman, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y. (Harvey M. Stone, and Richard W. Brewster, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Richard H. Kuh, New York City (Warshaw, Burstein, Cohen, Schlesinger & Kuh, New York City, Marc Richards, New York City, of counsel), for defendant-appellant.

Before SMITH, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAFFEILAND, Circuit Judge:

On May 31, 1977, this Court held that, when appellant was apprehended by United States Customs Officers at Kennedy International Airport as he was attempting to export a military aircraft gunsight camera without a State Department license, the officers had authority under New York law to arrest him without a warrant. *United States v. Swarovski,* 557 F.2d 40 (2d Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978). Thereafter, Swarovski pleaded guilty in the Eastern District of New York to Count One of an indictment charging him with violating 22 U.S.C. § 1934 [1] and associated regulations of the State Department. At the same time, he reserved by stipulation his right to appeal from the judgment of conviction. Appellant now attacks the constitutionality of the State Department regulations, the validity of the warrantless searches of his luggage, and the length of his sentence. Finding no merit in any of his contentions, we affirm.

Section 1934(a) authorizes the President to designate articles "arms, ammunition, and implements of war" and to control their export from the United States. Subdivision (c) makes it unlawful for anyone to violate the section or any rule or regulation issued thereunder. The general prohibitory regulation under the statute, 22 C.F.R. § 123.01, provides that equipment on the United States Munitions List shall not be exported until a license has been obtained from the Department of State. The Munitions List, 22 C.F.R. § 121.01, includes within the definition of arms, ammunition, and implements of war, "[a]erial cameras, space cameras, special purpose military cameras, and specialized processing equipment therefor." The camera involved herein was the KB25A Gunsight Camera, manufactured in California by Photo-Sonics, Inc., and intended for mounting on the gunsights of F–4D and F–4E fighter planes.

Appellant contends that the regulations were unconstitutionally vague in that they did not describe the regulated camera in sufficient detail and did not require that purchasers be notified somehow that criminal liability would follow upon the camera's unlicensed export. This argument comes with little grace from one who was fully cognizant of the wrongfulness of his acts. *See Screws v. United States,* 325 U.S. 91, 102, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). Appellant, an Austrian citizen, controls companies in both the United States and Canada. On March 8, 1974, he instructed Rodney Parker, the manager of his Canadian company, to obtain from Photo-Sonics information and price quotations on four sophisticated cameras, one of which was the KB25A. Shortly thereafter, he directed Parker to order one camera of each type. Three were delivered. Photo-Sonics advised Parker that a State Department export license was required for the KB25A and requested a separate purchase order for that camera. Parker submitted the requested order together with a State Department license application form. Item One on the form called for disclosure of the ultimate consignee, *i. e.,* the person who "is actually to receive the material for end use." Although the ultimate consignee in this case was the Soviet Union, Parker stated on the form that it was appellant's Austrian company.

---

1. The current version of 22 U.S.C. § 1934 is codified as 22 U.S.C. § 2778.

On January 7, 1975, Photo-Sonics notified Parker that the State Department had returned the license application and requested precise identification of the ultimate consignee. When Parker responded that he could not supply that information, he was advised that the State Department would not issue a license and the sale could not be completed.

On February 3, 1975, Parker notified appellant by telegram that the State Department would not accept his company as the final consignee and asked whether appellant could "come up with a better name they might believe." Appellant instructed Parker to have the purchase made through appellant's United States company. Parker telegraphed in reply that this could be done, but that an export permit would still be needed if the camera was to be shipped out of the United States. When asked by the general manager of appellant's Austrian plant whether appellant could pick up the camera and export it personally on his next trip to the United States, Parker replied by telex that appellant would be running a serious risk of legal action if caught. The KB25A was purchased by appellant's United States company and, when delivered, was accompanied by an invoice that stated in bold type on its face:

> ABOVE ITEMS ARE OF U.S.A. ORIGIN AND MANUFACTURE. ABOVE PHOTOGRAPHIC EQUIPMENT IS UNDER UNITED STATES DEPARTMENT OF STATE MUNITIONS LIST CATEGORY NUMBER XIII(a), AND AS SUCH MUST BE EXPORT LICENSED BY THE U.S. DEPARTMENT OF STATE PRIOR TO EXPORT FROM THE UNITED STATES.

■ A defendant may successfully assert unconstitutional statutory vagueness where the proof shows that he could not reasonably have understood that his contemplated conduct was proscribed. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d

561 (1963). In cases such as the instant one, this determination must be made in the light of the facts before the court. *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). We are dealing here with a regulation of limited scope aimed at a small and relatively sophisticated group of persons. *Cf. Papachristou v. City of Jacksonville,* 405 U.S. 156, 162–63, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). It put exporters squarely on notice that they needed a license in order to export a camera such as the KB25A, and therefore satisfied constitutional requirements. *Cf. United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns,* 443 F.2d 463, 466 (2d Cir.), *cert. denied,* 404 U.S. 983, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971).

■ The warrantless searches of appellant's luggage as he was about to depart the country did not violate his Fourth Amendment rights. *See United States v. Asbury,* 586 F.2d 973, 975 (2d Cir. 1978). Appellant's contention that customs officials can make such a search only when the person whose effects are being searched is entering the United States is not the law. *See* 22 U.S.C. § 401(a); *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 63, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *United States v. Chabot,* 193 F.2d 287, 290 (2d Cir. 1951); *United States v. Stanley,* 545 F.2d 661, 667 (9th Cir. 1976), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978); *Samora v. United States,* 406 F.2d 1095, 1098–99 (5th Cir. 1969).[2]

■ Following appellant's plea of guilty he was sentenced to the maximum term of two years. Our power to review this sentence is extremely limited. *Dorszynski v. United States,* 418 U.S. 424, 440–41, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *United States v. Holder,* 412 F.2d 212, 214 (2d Cir. 1969). Appellant has not shown that the sentencing judge relied upon such constitutionally impermissible factors or material inaccuracies as to justify review by this

---

**2.** The authority to seize illegal exports that is given the Secretary of the Treasury by § 401(a) may be delegated by him to employees of his

department. *See Reorganization Plan No. 26 of 1950, Department of Treasury,* sec. 2, 64 Stat. 1280, 1281.

Court. *See United States v. Brown,* 479 F.2d 1170, 1172 (2d Cir. 1973).

The judgment appealed from is affirmed.