**UNITED STATES of America, Plaintiff,**

v.

**Roger GEISSLER, Defendant.**

**No. CR–89–714(S2) (ADS).**

United States District Court,
E.D. New York.

Feb. 21, 1990.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Peter R. Ginsberg, Brooklyn, N.Y., for plaintiff U.S.

Rivkin, Radler, Dunne & Bayh by James B. Rather, Uniondale, N.Y., for defendant Roger Geissler.

## MEMORANDUM AND ORDER

SPATT, District Judge.

Defendant Roger Geissler ("Geissler") moves to dismiss Count One of a two-count indictment [1] on the grounds that it fails to charge a viable offense and/or that the offense charged is unconstitutionally vague as applied. For the reasons stated below, the defendant's motion is denied in all respects.

## THE INDICTMENT

In the indictment Geissler is charged with violating federal law and regulations governing the export of commodities to foreign nations (in this case to Iran). Specifically, the Export Administration Regulations ("EAR"), promulgated pursuant to the Export Administration Act, 50 U.S.C. App. §§ 2401–2420, and administered by the Department of Commerce, outline licensing requirements for various commodities which are exported to certain countries. These commodities are enumerated in the EAR Commodity Control List ("CCL"), 15 C.F.R. § 799.1(a). Count One of the indictment charges Geissler and others with the following crime:

"ROGER GEISSLER ... and others did knowingly, wilfully and unlawfully com-

---

1. Geissler initially had also moved to dismiss Count Two of the indictment (S1) for failure to allege overt acts in furtherance of the charged conspiracy. Subsequent to the filing of the instant motion, a grand jury returned a supersed-ing indictment (S2), which in fact alleges overt acts in Count Two. As a result, at oral argument counsel for defendant Geissler withdrew Geissler's motion to dismiss Count Two.

bine, conspire, confederate and agree to commit an offense against the United States in violation of Title 50, United States Code App., Section 2410 and the Export Administration Regulations promulgated thereunder, 15 C.F.R. § 768, *et seq.*, by conspiring to engage in the business of exporting and causing to be exported from the United States articles, *to wit, military aircraft tires for F–14 military aircraft,* without obtaining a required United States Department of Commerce license for such export." Indictment ¶ 10 (emphasis added).

Count One of the indictment also lists two overt acts undertaken by Geissler in furtherance of the alleged conspiracy.

Geissler argues that tires for F–14 military aircraft are not "commodities" covered by the CCL and therefore by the EAR, and as a result Count One fails to charge a viable offense. Geissler Memorandum of Law at p. 2. Moreover, Geissler claims that even if F–14 military tires are found in the CCL and therefore within the EAR, such a "strained and irrational" interpretation of the EAR renders it unconstitutional as "impermissibly vague in their application" in this case. Geissler Reply Memorandum of Law at p. 10. Geissler apparently does not dispute the fact that the country to whom he allegedly conspired to export F–14 aircraft tires—Iran—is a country identified by Commerce Department regulations as a destination requiring an export license.

## THE REGULATIONS

The EAR are designed, *inter alia,* to "protect the domestic economy from the excessive drain of scarce materials and to reduce the serious inflationary impact of foreign demand" for certain goods, and to "further significantly the foreign policy of the United States and to fulfill its international responsibilities." 15 C.F.R. § 770.1(a)(1) and (2). In order to carry out their stated purposes, the EAR contain de-

tailed parameters outlining what commodities exported to which countries are within the Commerce Department's jurisdiction.

The general export proscription contained in the EAR is as follows:

Subject to the provisions of §§ 770.4, 770.5, and 770.6, the export from the United States of all commodities ... is hereby prohibited unless and until a general license authorizing such export shall have been established or a validated license or other authorization for such export shall have been granted by the Office of Export Licensing....

15 C.F.R. § 770.3(a).

The term "commodities" is defined broadly, as "[a]ny article, material or supply except technical data." 15 C.F.R. § 770.2. Furthermore, the EAR provide detailed instructions for applying for and obtaining export licenses where one is required as well as detailed procedures for appealing agency denial of license applications. *See, e.g.,* 15 C.F.R. §§ 770.11, 770.-12, 770.13, 770.14, 770.15, and 15 C.F.R. Parts 771 (General Licenses), 772 (Individual validated licenses), 773 (Special licensing procedures), 774 (Reexports), and 775 (Documentation requirements).

All commodities under the export licensing jurisdiction of the Department of Commerce are contained on the CCL. *See* 15 C.F.R. § 799.1(a) (the CCL "includes all commodities subject to U.S. Department of Commerce export controls") and § 799.1(f) ("All items subject to Commerce licensing jurisdiction are included on the CCL, either in a specific commodity listing or in an 'other, n.e.s.' [2] entry at the end of each Commodity Group"). The EAR enumerate certain "factors" to be considered in determining whether a commodity should appear on the CCL, including the commodity's civilian use, military use, and its availability abroad. *See* 15 C.F.R. § 770.1(b)(3)(i)–(vi). [3] The CCL is broken down into ten general groups. Contained within each group are

---

**2.** "N.e.s." means "not elsewhere specified." 15 C.F.R. § 799.1(j).

**3.** The Commerce Department reviews the CCL "at least once every 3 years in the case of multilateral controls, and annually in the case of all

other controls," to evaluate what commodities should be listed on the CCL consistent with the stated purposes of the EAR. 15 C.F.R. § 770.1(b)(1).

commodity entries identified by a four digit number plus a letter—the Export Control Commodity Number ("ECCN"). Each digit of this number communicates a certain descriptive meaning for the commodity, *i.e.*, the first digit relates to the strategic level of control associated with the commodity. *See* 15 C.F.R. § 799.1(b). The CCL does not identify the commodities within Commerce Department jurisdiction any more specifically than the ECCNs contained within each group.

The instant indictment concerns CCL Commodity Group Four, entitled "Transportation Equipment." Group Four contains twenty-four ECCNs. At oral argument, and in their brief, *see* Government Memorandum of Law at p. 11, the Government contended that an export license was required for F–14 military tires (allegedly destined for Iran) by reason of Commodity Group Four, ECCN 6498F, which contains the following description:

> *Other aircraft parts and components, n.e.s.;* other boats, including inflatable boats, n.e.s.; other diesel engines for trucks, tractors, and automotive applications of continuous brake horsepower of 400 BHP (298 kW) or greater ... n.e.s.; other underwater camera equipment, n.e.s.; other submersible systems, n.e.s.; and specially designed parts for the above equipment.

15 C.F.R. § 799.1, Supp. 1, Group 4, 6498F (emphasis added).

ECCN 6498F also specifically states that a validated license is required for 6498F commodities exported to Iran. *See* 15 C.F.R. § 799.1, Supp. 1, Group 4, 6498F ("Validated License Required: ... Iran ...").

In addition to outlining those commodities within Commerce Department export licensing jurisdiction, the EAR, at 15 C.F.R. § 770.10, also delineates the categories of commodities outside of Commerce Depart-

ment jurisdiction. Significantly, 15 C.F.R. § 770.10(a), entitled "Exports which are not controlled by the Office of Export Licensing," provides that "Regulations administered by the Office of Munitions Control, U.S. Department of State, ... govern the export of defense articles and defense services on the U.S. Munitions List." [4] Category VIII of the U.S. Munitions List, entitled, "Aircraft, Spacecraft, and Associated Equipment," states: "(g) Components, parts, accessories, attachments, and associated equipment ... specifically designed or modified for the articles in paragraphs (a) through (f) of this category [including "aircraft"], *excluding aircraft* [5] *tires* and propellers used with reciprocating engines." 15 C.F.R. Pt. 770, Supp. 2, Category VIII(g) (emphasis added).

By the terms of Category VIII(g) of the U.S. Munitions List, export of F–14 aircraft tires are clearly excluded from State Department licensing jurisdiction. Moreover, none of the other categories of commodities listed in section 770.10 as outside of Commerce Department jurisdiction apply to F–14 aircraft tires.

### THE MOTION

In alleging that defendant Geissler committed an offense against the United States in violation of 50 U.S.C.App. § 2410 and the EAR, the indictment charges that "At all times relevant to this indictment, military aircraft tires for the F–14 military aircraft were governed by the CCL." Indictment ¶ 5. Defendant Geissler moves to dismiss the indictment for failure to charge an offense in Count One because "[t]he articles in question, tires for the F–14 military aircraft, are not subject to the export licensing controls of the Department of Commerce...." Geissler Memorandum of Law at p. 2. In addition, Geissler claims that "even assuming arguendo that the tires are by implication subject to the Commerce Department regulations, the law, as it applies to the goods at issue, is so vague that it

---

**4.** State Department export regulations are promulgated pursuant to 22 U.S.C. § 2778, the Arms Export Control Act.

**5.** "Aircraft" is not defined in the U.S. Munition List, which merely states that "[t]he following articles" are contained on the U.S. Munitions List and defines the term "articles" to "mean any of the arms, ammunition, and implements of war and technical data relating thereto enumerated in the United States Munitions List." 15 C.F.R. Pt. 770, Supp. 2, n (1).

fails to give prior warning that the objective was forbidden ... [and] would be unconstitutionally applied." Geissler Memorandum of Law at pp. 2–3. In this Court's view, both such contentions are without merit.

DISCUSSION

A. *Failure To Charge An Offense*

■ Upon reviewing the relevant portions of the EAR, the Court finds that F–14 aircraft tires are contained in the CCL and therefore are covered by the EAR.

Section 770.3(a) of the EAR expressly states that "the export from the United States of *all* commodities" is governed by the licensing requirements of the EAR unless "controlled by another U.S. Government agency (see § 770.10)." 15 C.F.R. § 770.3(a)(3) (emphasis added). The term "commodities" is defined as "[a]ny article, material or supply except technical data," a definition which certainly encompasses F–14 aircraft tires. 15 C.F.R. § 770.2. The EAR does not explicitly exclude coverage of F–14 aircraft tires from its jurisdiction, and no other government agency, as listed in section 770.10, controls the export of F–14 tires. Moreover, the only other agency which presumably would regulate the export of F–14 aircraft tires—the State Department—explicitly excludes F–14 aircraft tires from its jurisdiction. *See* 15 C.F.R. Pt. 770, Supp. 2, Category VIII(g). It is reasonable to conclude, therefore, that F–14 tires are within Commerce Department jurisdiction.

The specific EAR provision governing F–14 aircraft tires, correctly identified by the Government, is 15 C.F.R. § 799.1, Supp. 1, Group 4, ECCN 6498F: "Other aircraft parts and components, n.e.s. [not elsewhere specified]...." The Court finds that a plain reading of this language indicates that F–14 aircraft tires come within the terms of 6498F. A reasonably prudent person, no less a sophisticated businessman and arms exporter, would read and understand ECCN 6498F as including F–14 aircraft tires. Stated simply, "[o]ther aircraft parts and components, n[ot] e[lsewhere] s[pecified]" clearly covers the commodity at issue in this indictment, a finding consistent with both the stated jurisdiction of the EAR and the generic nature of the EAR groups themselves.[6]

Geissler argues that Commerce Department jurisdiction and the EAR apply only to non-military or civilian commodities or to "dual use" commodities—commodities with both military and civilian application. Geissler reasons that purely military commodities, such as F–14 aircraft tires, are within the province of State Department regulation. Because F–14 aircraft tires are exclusively for military use, Geissler concludes that they cannot be covered by the EAR.

Although initially appealing, Geissler's legal argument finds no support in the applicable regulations. Nowhere does the EAR limit its jurisdiction to solely non-military and "dual use" commodities. In fact, the EAR sets forth a broad jurisdictional mandate which includes "all commodities" unless regulation is controlled by "another U.S. Government agency (see § 770.10)." 15 C.F.R. § 770.3(a)(3). Nothing within section 770.10, including the United States Munitions List (which explicitly excludes regulation of military aircraft tires), regulates F–14 tires. This Court further notes that Geissler makes no attempt to explain how his interpretation of the EAR—that export of F–14 aircraft tires is not within Commerce Department or State Department jurisdiction—could be consistent with the EAR statement that all commodities are within Commerce Department jurisdiction unless regulated by another agency. *See* 15 C.F.R. § 770.3(a)(3).

Furthermore, some Group 4 ECCN's in the EAR are explicitly directed to commodities which have solely military application. *See, e.g.,* ECCN 2406A ("Vehicles specially

---

**6.** The EAR state that "[i]f a commodity you intend to export appears to be covered by a CCL entry and the commodity description carries the limitation 'n.e.s.' you should not use that CCL entry until you determine whether another CCL entry specifically covers that commodity." 15 C.F.R. § 799.1(j). Moreover, the EAR provide that "Export Administration will respond to properly submitted requests for verification of the proper ECCN within ten working days after receipt of the request." 15 C.F.R. § 799.1(f).

designed for military purposes and specially designed components therefor, excluding vehicles listed in [the U.S. Munitions List]"); ECCN 2410A ("Equipment Specially Designed for Military Purposes"); and ECCN 2414A ("Specialized Military Training Equipment"). Also, other ECCN's in Group 4 specifically restrict their effect to commodities which have purely civilian application. *See, e.g.,* ECCN 5460F ("Other nonmilitary aircraft and demilitarized military aircraft ..."); and ECCN 5480B ("Nonmilitary mobile crime science laboratories ..."). It is therefore apparent that the EAR has provided for solely military and solely civilian commodities in certain instances. Despite Geissler's contention to the contrary, the EAR can, and ECCN 6498F clearly does apply to a solely military commodity.

The case law cited as authority by Geissler for the proposition that the EAR apply only to non-military or dual use commodities is also non-dispositive. Neither *United States v. Helmy,* 712 F.Supp. 1423 (E.D. Cal.1989), nor *United States v. Malsom,* 779 F.2d 1228 (7th Cir.1985), cite to any support in the enabling legislation or in the regulations themselves for this proposition.

In *Helmy,* the court addressed the issue of whether a defendant could take discovery of the State Department's determination to place a commodity on the United States Munitions List. Although in a footnote the court stated that the Export Administration Act "regulates the use of 'dual use' articles," the court did not analyze its characterization of the Export Administration Act nor did it cite to language in the Act employing the "dual use" construction. 712 F.Supp. at 1424 n. 1. Similarly, the court in *Malsom,* while analyzing whether certain commodities are governed by the EAR, did not substantiate its statement that dual use commodities require a Commerce Department license and exclusively military commodities require a State Department license. 779 F.2d at 1231. In fact, nowhere in either *Helmy* or *Malsom* is there a discussion of whether solely military commodities are covered by the EAR. The Court further notes that the United States Munitions List does not state that all solely military commodities must come within State Department and not Commerce Department jurisdiction. In sum, this Court is unable to discern any reference in the EAR or in the Export Administration Act (or in the U.S. Munitions List) to "dual use" commodities or to a limitation of the EAR to non-military or dual use commodities.

Geissler cites to 50 U.S.C.App. § 2416(c) for the proposition that under the Export Administration Act only civilian aircraft and not military aircraft are governed by the Department of Commerce. Geissler Reply Memorandum of Law at p. 7. However, section 2416(c), entitled "Effect on other Acts," merely provides that:

Notwithstanding any other provision of law, any product (1) which is standard equipment, certified by the Federal Aviation Administration, in civil aircraft and is an integral part of such aircraft, and (2) which is to be exported to a country other than a controlled country, shall be subject to export controls exclusively under this Act ... Any such product shall not be subject to controls under Section 38(b)(2) of the Arms Export Control Act [22 U.S.C.A. § 2778(b)(2) ].

50 U.S.C.App. § 2416(c).

While section 2416(c) does limit export of certain civilian aircraft equipment to Commerce Department jurisdiction, section 2416(c) in no way *excludes* military aircraft equipment from Commerce Department jurisdiction in all circumstances.

Finally, in support of his argument that the Commerce Department does not have jurisdiction over solely military commodities, Geissler refers to Interpretation 20 of the EAR, 15 C.F.R. § 799.2, Supp. 1, which states:

(a) *Aircraft, and parts, accessories and components therefor.* Aircraft, parts, accessories, and components defined in Categories VIII and IX of the Munitions List (see supplement No. 2 to Part 770) are under the export licensing authority of the U.S. Department of State. *All other aircraft, and parts, accessories and components therefor, are under*

*the export licensing authority of the U.S. Department of Commerce.*

The following aircraft, parts, accessories and components are under the licensing authority of the U.S. Department of Commerce: [ (1) through (6) ].

15 C.F.R. § 799.2, Supp. 1, Interpretation 20 (emphasis added) (footnote omitted).

Geissler argues that because F–14 aircraft tires do not belong to any of the six categories listed in Interpretation 20(a) they are not a commodity within the jurisdiction of the EAR and the Commerce Department. Geissler Memorandum of Law at pp. 11–13. The Court finds Geissler's argument in this regard to be unpersuasive. First, Interpretation 20(a) specifically states that all aircraft parts

defined in ... the Munitions List ... are under the export licensing authority of the U.S. Department of State. *All other aircraft, and parts, accessories and components therefor,* are under the export licensing authority of the U.S. Department of Commerce.

15 C.F.R. § 799.2, Supp. 1, Interpretation 20 (emphasis added).

Thus, Interpretation 20(a) clearly provides that aircraft tires are covered either in the EAR or in the State Department regulations. Since the State Department regulations specifically exclude F–14 aircraft tires, *see* 15 C.F.R. Pt. 770, Supp. 2, Category VIII(g), by the terms of Interpretation 20(a) the EAR therefore must cover F–14 aircraft tires.

Second, although categories (1) through (6) of Interpretation 20(a) do not expressly apply to F–14 aircraft tires, this omission in no way indicates that F–14 aircraft tires are not covered by the EAR. Interpretation 20(a) does not specifically exclude F–14 aircraft tires from the EAR. The introductory sentence to categories (1) through (6) of Interpretation 20(a) states that "The following aircraft, parts, accessories and components are under the licensing authority of the U.S. Department of Commerce...." 15 C.F.R. § 799.2, Supp. 1, Interpretation 20(a). The enumerated categories are not, however, prefaced by a statement stating that the listed items are the only aircraft

parts under EAR jurisdiction, the interpretation urged by Geissler.

In sum, this Court finds that the plain language of the EAR, namely 15 C.F.R. § 799.1, Supp. 1, Group 4, ECCN 6498F, read in conjunction with the plain language of 15 C.F.R. §§ 770.3(a) and 770.10, indicates that F–14 aircraft tires are contained in the CCL and are therefore covered by the EAR. Accordingly, defendant Geissler's motion to dismiss Count One of the indictment on the ground that it fails to charge an offense is denied.

### B. *Unconstitutional Vagueness*

■ Geissler argues that if F–14 aircraft tires are found to be within the CCL, then 50 U.S.C.App. § 2410 is unconstitutionally vague because it failed to give him prior warning that export of F–14 aircraft tires to Iran without an export license was forbidden. Geissler Memorandum of Law at pp. 17–19. Geissler contends that the prohibition contained in the EAR for export of F–14 aircraft tires to Iran "could only be by implication," and that such "'between the lines,' after the fact prohibitions are unconstitutional when applied in the criminal context." Geissler Memorandum of Law at p. 17.

In response, the Government contends that the EAR provided adequate notice to Geissler of the applicable prohibitions and provided appropriate guidance regarding prosecution of violations. In addition, the Government claims that because it must prove that "Geissler knowingly intended to commit an act in violation of" 50 U.S.C. App. § 2410 and the regulations promulgated thereunder (the EAR), "the vagueness argument is overcome by the requirements of a trial." Government Memorandum of Law at p. 13.

A criminal statute is unconstitutionally vague if it fails to provide "reasonably clear guidelines" to the defendant and to the trier of fact in determining whether a crime has been committed so as "to prevent 'arbitrary and discriminatory enforcement.'" *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605 (1974) (citations omitted). Importantly, be-

cause criminal statutes necessarily include an element of willfulness, they are less likely to be found unconstitutionally vague. *Screws v. United States*, 325 U.S. 91, 102, 65 S.Ct. 1031, 1036, 89 L.Ed. 1495 (1945) ("where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law").

Geissler does not argue that the statute is vague on its face. *See, e.g., Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) ("the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement"). Instead, Geissler claims that the statute is unconstitutionally vague as applied to him in this indictment.

A similar constitutional challenge was made to a criminal statute in *United States v. National Dairy Prods. Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963), in which the defendant corporation and the defendant were indicted under section three of the Robertson–Patman Act, 15 U.S.C. § 13a, for selling goods at "unreasonably low prices for the purpose of destroying competition." 372 U.S. at 29, 83 S.Ct. at 594. The defendants challenged the statute as unconstitutionally vague and indefinite as applied, specifically with respect to sales it had made below cost. *Id.* The Court set forth the applicable constitutional analysis as follows:

> Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.... In determining the sufficiency of the notice a statute must of necessity be examined in light of the conduct with which a defendant is charged.

372 U.S. at 32–33, 83 S.Ct. at 597–598 (citations omitted). *Accord United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710,

714, 42 L.Ed.2d 706 (1975) ("vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand").

The Court in *National Dairy* then determined that the statutory language of section 13a of the Robinson–Patman Act was sufficiently specific to give the defendants "sufficient warning that selling below cost for the purpose of destroying competition is unlawful...." 372 U.S. at 33, 83 S.Ct. at 598. In reaching this conclusion, the Court held:

> we think the additional element of predatory intent alleged in the indictment and required by the Act provides further definition of the prohibited conduct.... The Act here ... in prohibiting sales at unreasonably low prices for the purpose of destroying competition, listed as elements of the illegal conduct not only the intent to achieve a *result*—destruction of competition—but also the *act*—selling at unreasonably low prices—done in furtherance of that design or purpose. *It seems clear that the necessary specificity of warning is afforded when, as here, separate, though related, statutory elements of prohibited activity come to focus on one course of conduct.*

*Id.* at 35, 83 S.Ct. at 599 (some emphasis in original and some added).

Like in the criminal statute at issue in *National Dairy*, 50 U.S.C.App. § 2410 sets forth the requisite criminal intent necessary to sustain a conviction, as follows:

> whoever knowingly violates or conspires or attempts to violate any provision of this Act ... or any regulation, order, or license issued thereunder shall be fined not more than five times the value of the exports involved or $50,000, whichever is greater, or imprisoned not more than 5 years, or both.

*Id.*

The statute at issue in this indictment specifies the predatory intent defining the prohibited conduct; namely, "knowingly" violating or conspiring to violate the Export Administration Act and the EAR. Furthermore, the indictment itself charges

Geissler with "knowingly, wilfully and unlawfully" conspiring to commit an offense against the United States in violation of 50 U.S.C. § 2410 and the EAR "by conspiring to engage in the business of exporting ... from the United States ... military aircraft tires for F–14 military aircraft, without obtaining a required United States Department of Commerce license for such export." Indictment ¶ 10. Thus, consistent with the requirement of *National Dairy*, in order to obtain a conviction of Geissler, the Government must prove beyond a reasonable doubt that Geissler knowingly exported from the United States F–14 military aircraft tires, without obtaining an export license as required by 15 C.F.R. § 799.1, Supp. 1, Group 4, ECCN 6498F.

A review of the precedents reveals that "as applied" vagueness challenges to export licensing criminal statutes and regulations have been rejected by federal courts. For example, in *United States v. Swarovski*, 592 F.2d 131 (2d Cir.1979), the defendant was indicted for unlawfully "attempting to export a military aircraft gunsight camera without a State Department license." *Id.* at 132. The defendant argued on appeal that the State Department "regulations were unconstitutionally vague in that they did not describe the regulated camera in sufficient detail and did not require that purchasers be notified somehow that criminal liability would follow upon the camera's unlicensed export." *Id.* The court rejected the defendants argument, as follows:

A defendant may successfully assert unconstitutional statutory vagueness where the *proof* shows that he could not reasonably have understood that his contemplated conduct was proscribed.... this determination must be made in the light of the facts before the court.... We are dealing here with a regulation of limited scope aimed at a small and relatively sophisticated group of persons.... It put exporters squarely on notice that they need a license in order to export a camera such as the KB25A, and therefore satisfied constitutional requirements.

*Id.* at 133 (citations omitted) (emphasis added).

Similarly, in *United States v. Gregg*, 829 F.2d 1430 (8th Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988), the court rejected a defendant's "as applied" vagueness challenge to the Commerce Department's export regulations. In holding that the regulations were constitutional as applied to the defendant, the court recognized that any possible ambiguity in the regulations—the basis for the defendant's as applied challenge—was vitiated by the trial of the defendant and the Government's obligation to prove willfulness beyond a reasonable doubt:

When the case gets to court, all that the Government needs to prove is that the item exported appears on the Munitions List or the Commodity Control List, as the case may be (and, of course, that the defendant *knowingly and willfully* exported it, with the necessary intent and knowledge, and without an appropriate license). There is no unconstitutional vagueness. It is as simple a matter as forbidding a passenger to ride on a train without a valid ticket.

*Id.* at 1437 (emphasis added).

Finally, in *United States v. Zheng*, 768 F.2d 518 (3d Cir.1985), *cert. denied*, 474 U.S. 1060, 106 S.Ct. 806, 88 L.Ed.2d 781 (1986), the defendants argued that the State Department's U.S. Munitions list and its enabling legislation "was unconstitutionally vague because it failed to put them on notice that the wave tube amplifiers were covered by the Arms Control Export Act." *Id.* at 520. The circuit court in *Zheng* left undisturbed the district court's holding that the defendants' "as applied" constitutional challenge could not be determined before trial because "'absent the resolution of certain disputed facts' ... [the court] could not determine before trial 'whether or not wave tube amplifiers are reasonably encompassed within the term countermeasure in the eyes of the average arms exporter.'" *Id.*

Geissler's "as applied" vagueness challenge can only be addressed "in light of the facts of the case at hand." *United States*

*v. Mazurie*, 419 U.S. at 550, 95 S.Ct. at 714. As already discussed, the particular regulation Geissler is charged with violating, 15 C.F.R. § 799.1, Supp. 1, Group 4, 6498F, applies to F–14 aircraft tires. The Export Administration Act, the EAR and the indictment clearly set forth the element of predatory intent that the Government must prove Geissler possessed beyond a reasonable doubt to sustain a conviction at trial; namely, that Geissler knowingly exported F–14 aircraft tires to Iran, without obtaining an export license, in violation of 50 U.S.C.App. § 2410 and the EAR. There are no facts before the Court at this time which indicate that, as a matter of law, the Government could not meet its burden of proof in this case. As a result, Geissler's constitutional vagueness challenge is without merit.

CONCLUSION

For the reasons stated above, Geissler's motion to dismiss Count One of the indictment is denied.

SO ORDERED.